NORMAN KOTLISKY, Indiv. and as Ex'r of the Lila Kotlisky Estate and as Trustee of Trust A under the Will of Adolph Kotlisky, *et al.*, Plaintiffs-Appellees, v. ALLAN I. KOTLISKY, Defendant-Appellant.

First District (4th Division) No. 1—88—3667

Opinion filed March 22, 1990.

Molaro & Salon, of Chicago (Charles K. Piet, of counsel), for appellant.

Siegan, Barbakoff & Gomberg, of Chicago (Steven P. Gomberg, of counsel), for appellees.

JUSTICE LINN delivered the opinion of the court:

Adolph Kotlisky died in California in 1948, leaving a substantial estate divided into a number of trusts to provide for his wife, Lila, and their children, Allan, Norman, Rose, and Phyllis. Lila established during her lifetime "The Allan Trust" for the benefit of Allan. He borrowed money from this trust and from Lila. Lila Kotlisky died in September 1986. At issue in the pending litigation is the disposition of one trust, "Trust A," which was set up in Adolph's will, and the question whether Allan's share in Trust A should be set off by the amount of money he is alleged to owe Lila's estate because of the

loans he received during her lifetime. Plaintiffs are Norman Kotlisky, individually, as executor of Lila's estate and as trustee of Trust A under Adolph's will; Rose Kotlisky; and Phyllis Kotlisky Poplawski.

Plaintiffs filed an action for declaratory judgment in the circuit court of Cook County, seeking an adjudication that defendant, Allan, was indebted to Lila's estate, as evidenced by certain promissory notes. Further, they requested a declaration that his inheritance interest in the corpus of Trust A, located in a Chicago bank, be used to satisfy that debt. In attempting to serve defendant with process, plaintiffs hired a special process server in California, defendant's State of residence. Two attempts failed, and he was never personally served. Plaintiffs then effected service by publication, after which they obtained a default judgment against defendant. He filed a special and limited appearance to test the Illinois court's jurisdiction over him and moved to quash service of summons. The trial court held that the service by publication was good and denied the motion to quash. Plaintiffs then proceeded to a prove up of damages and received a judgment award of approximately $555,000 on a complaint requesting the principal sum of $258,550 plus interest and attorney fees.

The single issue on appeal is whether the trial court had jurisdiction to enter the judgment of default and damages.

We reverse.

BACKGROUND

Norman Kotlisky resides in Chicago, Illinois. Phyllis, Rose, and Allan are residents of California. In their complaint for declaratory judgment and other relief, plaintiffs allege that Allan transacted business in Illinois within the meaning of the Illinois "long-arm" statute (Ill. Rev. Stat. 1987, ch. 110, par. 2—209(a)(1)), "by, among other things, executing certain promissory notes that are the subject matter of this action."

Plaintiffs allege that Trust A was established under the will of Adolph Kotlisky, dated August 6, 1941. In 1948, Adolph died and his will was admitted to probate in California. According to his will, plaintiffs allege, "Trust A was to be used primarily for Lila's benefit [and, upon her death] Trust A was to terminate and the property distributed in two equal shares," to Allan and Phyllis.[1] Lila and Norman

---

[1]Adolph's will, attached to the complaint, directs that Trust A is to be for the benefit of Lila and the two "younger" children, Allan and Phyllis. The two "older children," Norman and Rose, each received a proportionate share of property in Trusts B and C, respectively.

were the trustees, and upon Lila's death in September 1986, Norman became sole surviving trustee. The corpus of Trust A consisted of approximately $2 million in cash and securities, held in a bank in Chicago.

The complaint further alleges that the "Allan Trust" was established in March 1966 by Lila as grantor, with Lila, Clement Caditz, and Richard H. Levin as trustees. Defendant was the primary beneficiary of this trust, which was to last until December 1986 or Lila's death, whichever occurred first.

Plaintiffs allege that upon Lila's death in September 1986, "the Allan Trust was divided into equal shares for Norman, Allan, Phyllis, and Rose, who could receive the income of the trust, in the trustees' discretion, until December 31, 1986, when the accumulated income of the Allan Trust was distributed in equal shares to Norman, Allan, Phyllis, and Rose, and the principal of the Allan Trust was to be paid to the Estate of Lila, of which plaintiff Norman Kotlisky is the sole trustee."

The complaint further alleges that Allan borrowed money from Lila and from the Allan Trust and that he has failed and refused to make payments on these debts. Under Lila's will, her estate was to be divided in four equal shares: one each for Norman, Phyllis, and Rose, and one share to be divided between Allan's two children. Norman, as trustee of Trust A and executor of Lila's estate, seeks to distribute the funds in Trust A and collect the monies Allan owes the estate. Since Norman is also a beneficiary under the will, he requests the court's intervention by the declaratory proceeding. According to the complaint, he has already distributed all of the monies in Trust A except $216,104.25, which he calculates is the amount that Allan owes Lila's estate.

The complaint requests that a judgment be entered declaring that defendant owes the amount of $258,550, plus interest and attorney fees, to Lila's estate and to further declare that the funds in Trust A be used to satisfy the debt.

After the complaint was filed, plaintiffs' attorneys directed a special process server to serve Allan with process in California, in July 1987. The record indicates that the first attempt at service failed. Plaintiffs' attorney contacted a California attorney who had represented Allan on previous matters to see if he would accept service on behalf of his client, but ultimately this attempt at service also failed. Plaintiffs' attorney then hired an investigator to locate Allan, also to no avail. In November 1987 plaintiffs' attorney again hired the special process server to serve Allan at a court hearing pending in Federal court in California. This service attempt also failed.

In February 1988 plaintiffs caused notice of their lawsuit to be placed for publication in the Chicago Daily Law Bulletin. Thereafter, plaintiffs moved for entry of default judgment on the grounds that Allan had not appeared nor answered the complaint.

Default judgment was granted on September 1, 1988, and the prove up was set for October 14. On that date, Allan, through counsel, filed a special and limited appearance and moved to quash service of summons and vacate default on the grounds that the Illinois court had not obtained jurisdiction over him because plaintiffs had not complied with the statutory requisites of section 2—208(b) of the Code of Civil Procedure. (Ill. Rev. Stat. 1987, ch. 110, par. 2—208(b).) This section governs personal service over nonresident defendants.

Plaintiffs' response simply asserted that service by publication was a proper mode of service, without citing any case authority. It further stated in conclusory fashion that Allan had waived his jurisdictional objections by citing to the merits of the case in one paragraph of his motion.

At the hearing the trial court heard brief argument and denied the motion to quash. The court and plaintiffs' attorneys also discussed the form of the proofs to be presented in the prove up of damages. The record does not contain a transcript of the prove up proceedings, but the judgment appealed from states in pertinent part, "Judgment is hereby entered in favor of Norman Kotlisky as Executor of the Estate of Lila Kotlisky and against the Defendant, Allan I. Kotlisky in the sum of $555,322.16 *** and that [j]udgment is entered declaring that Allan Kotlisky is obligated in the sum of $555,322.16 to the Estate of Lila Kotlisky, deceased and that the remaining funds held by Trust A, established under the Will of Adolph Kotlisky be used to satisfy this debt."

OPINION

Allan's position is simple: There was no personal service of summons on him, pursuant to section 2—208(b), and therefore the court lacked jurisdiction to enter the orders that it did. In contrast, plaintiffs assert that publication notice was effective, based on their characterization of the action as a proceeding *in rem*. They cite no cases in support, however. Since the trust account is located in a Chicago bank, plaintiffs contend that Illinois courts have jurisdiction to enter orders concerning Allan's interest in the money and the disposition of that money. They also argue that Allan waived his jurisdictional objection by asserting matters in his motion to quash that went to the merits of the case.

## I

■ We first address the waiver issue. Under well-settled case law, a person who wishes to contest the Illinois court's personal jurisdiction over him or her must limit the challenge to jurisdictional matters, as opposed to the substantive issues of the lawsuit. (*E.g.*, *Mueller v. Mueller* (1962), 36 Ill. App. 2d 305, 183 N.E.2d 887 (raising statute of limitations defense would waive special and limited appearance); *J.C. Penney Co. v. West* (1983), 114 Ill. App. 3d 644, 449 N.E.2d 188 (defendant's filing of post-judgment motion asserting meritorious defense and requesting vacation of default judgment would constitute general appearance prospectively but would not validate judgment entered without personal jurisdiction); *cf.* Ill. Rev. Stat. 1987, ch. 110, par. 2—301(c) (which states that proceeding to trial after losing the jurisdictional objection waives the objection, unless the objection is the fundamental one that "defendant is not amenable to process issued by a court of this State").) Logically, if a person asks the court for affirmative relief, or otherwise invokes the court's power, he or she cannot simultaneously protest that the court lacks jurisdiction.

We have reviewed the record and do not find any indication that Allan attempted to have the court determine any portion of the merits or possible defenses to the underlying action in debt. In his motion to quash service, Allan asserted, in one paragraph: "Furthermore in passing, the action by the Plaintiffs in their complaint is in effect an action in equity to attach certain proceeds of a trust *** due to said Defendant as beneficiary of said Trust. The law in our State is clear and is set forth in Section 229 of Chapter 7, entitled Trusts, Illinois Law and Practice, which states on page 400 thereof: '*** [quoted excerpt relates to the equity power of courts to determine questions relating to trusts and cites *Dunham v. Kauffman* (1943), 385 Ill. 79, 52 N.E.2d 143]. ***' It is therefore further clear that trust funds due a beneficiary of a trust of which the fund so held in trust has proceeded from some other person than the beneficiary (Defendant), are not subject to even garnishment in our State. Moreso, the trust in question was created in the state of California, by a resident of California, for the benefit of a California resident, the Defendant herein. The courts of California have exercised their jurisdiction prior to any action by the Plaintiffs in this cause and any matters touching the matters relating either to Trust A or the Estate of LILA KOTLISKY should be properly addressed to the Superior Court of the State of California, Los Angeles County, wherein the matters lie."

The point of the above passage is not altogether clear, and there-

fore, its relevance to the issues is obscure, also. We do not believe, however, that Allan intended to raise any issue going beyond the jurisdictional ones. (*Cf. Keller v. Snyder* (1951), 344 Ill. App. 294, 100 N.E.2d 672 (Objection that notes and indebtedness evidenced thereby are not subject to garnishment by judgment creditor because notes are physically outside of the jurisdiction of the court may properly be raised by a motion under a limited appearance).) Allan seems to be alluding to the fact that Illinois does not recognize "equitable attachments," which are prejudgment attachments of a defendant's property pending the outcome of the lawsuit, intended as a means to secure payment of a potential damages award. Allan's citation to *Dunham v. Kauffman* suggests this. We believe that this concept is relevant to the characterization of the underlying declaratory action as one *in rem* or *in personam.* Plaintiffs in the pending case asked the court to declare the liability on the debt and further declare that the trust funds should be used to satisfy the judgment. Because the court may, in a proper *in rem* action, enter orders against specific property, the distinction between the legal theory of the case (the debt) and the equitable relief sought (attachment of the trust funds) must be acknowledged so the court does not exceed its jurisdiction by using the trust fund as the base for entering the personal judgment against the defendant.

We conclude that Allan did not waive his jurisdictional objection. Allan has not asked the trial court for any relief beyond quashing service and vacating the default judgment as being void for want of jurisdiction. He does not address the substantive issues of plaintiffs' complaint, nor does he assert a defense to the action on the debt. Our reading of the above-quoted portion of his motion to vacate persuades us that Allan was attempting to include additional arguments going to jurisdiction only. He was merely attempting to characterize the nature of the pending action, not ask the trial court to grant him affirmative relief or take a position on the underlying merits of the complaint.

Plaintiffs' brief is largely concerned with the waiver issue, and they cite general principles of law, but they utterly fail to explain to us how the excerpt from Allan's motion turns his special and limited appearance into a general one. We conclude that the issue properly before us is whether section 2—206 of the Code of Civil Procedure allowed the trial court to obtain either *in personam* jurisdiction over defendant or *in rem* jurisdiction over the trust account in such a manner as to permit entry of the judgment orders on appeal.

## II

Plaintiffs argued and the trial court found that defendant was properly served with process through publication of notice under section 2—206 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—206). Before examining the terms of that statute, we note that neither side so much as alludes to the fundamental due process concerns that caused the United States Supreme Court to fashion the minimum contacts standard in reviewing a State court's exercise of jurisdiction over a nonresident. (*International Shoe Co. v. Washington* (1945), 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154.) In our opinion, a measure of confusion was injected into the appeal by this questionable assumption: The mere presence of Allan's personal property interest in the trust funds in Illinois gave the trial court jurisdiction to enter orders affecting Allan, if a proper mode of service were effected. To explain why that is inaccurate, we must trace the statutory and constitutional restraints on our State's exercise of *in personam* jurisdiction over nonresidents.[2]

### SERVICE OF PROCESS BY PUBLICATION UNDER SECTION 2—206

■ Section 2—206 allows a litigant to obtain service of process by publication upon the filing of an affidavit showing that the defendant resides or has gone out of State, "in any action affecting property or status within the *jurisdiction* of the court." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 110, par. 2—206.) The quoted language "was inserted to exclude the enforcement of a mere personal liability when no property of the non-resident (either real or personal) has been seized or brought under the control of the court." (Ill. Ann. Stat., ch. 110, par. 2—206, Historical & Practice Notes, at 180 (Smith-Hurd 1983).) One question to consider, therefore, is whether Allan's beneficial interest in the trust *res* had been "seized or brought under the control of the court" at the time service by publication was effected.

The record indicates that the trust account had not been brought

---

[2]The parties' attorneys are charged with presenting the court with the significant authorities that directly bear on the controversy. That citation to relevant law may be adverse to one's position is not an excuse. The most casual research into the area of *in personam* jurisdiction and the statutory methods of serving process would have revealed that all exercises of State courts over nonresidents, regardless of whether the action is *"in rem"* or *"in personam,"* are limited by the due process analysis pronounced in *International Shoe* and the numerous cases following that decision. Plaintiffs' position in the pending case, that the court may base its jurisdiction on the presence of defendant's personal property alone, harkens back to the now-discredited principles of *in rem* jurisdiction that were reevaluated in *Shaffer v. Heitner* (1977), 433 U.S. 186, 53 L. Ed. 2d 683, 97 S. Ct. 2569.

under the court's control until after the entry of the default judgment. Shortly after the court had granted default judgment against defendant and denied his motion to quash service, plaintiffs moved the court to freeze the trust assets pending further order of the court. After the hearing on the default prove up of damages, the court entered the judgment amount in excess of one-half million dollars and further ordered that the remaining funds in Trust A be used to satisfy the debt.

Cases in which nonresident defendants are served by publication generally focus on whether the underlying action can be classified as one *in personam* or one *in rem*, the assumption being that a matter involving "property or status" (*in rem*) will permit service by publication.

In an interpleader action, *Lain v. John Hancock Mutual Life Insurance Co.* (1979), 79 Ill. App. 3d 264, 271, 398 N.E.2d 278, 285, the court held that an insurer incurs personal liability to beneficiaries for a given sum of money and that the "claim of the beneficiary is a personal claim on a debt, *not a right in or a lien upon specific property.*" (Emphasis added.) The court also stated that the claim of a purported beneficiary is not the *res*, and that merely depositing funds with the court did not change the action from one *in personam* to one *in rem*.

One issue in *Lain* was whether the trial court could properly grant summary judgment on a counterclaim against a resident of Spain, one of the potential claimants to the insurance proceeds, who had been served by publication. The court rejected the argument that personal service was unnecessary because the interpleader was an "action *in rem.*" The court stated, "A binding judgment cannot be rendered against anyone over whom personal jurisdiction cannot be acquired." (79 Ill. App. 3d at 271, 398 N.E.2d at 284.) After reviewing the rationale of *Hanna v. Stedman* (1921), 230 N.Y. 326, 130 N.E. 566, the *Lain* court agreed that an action *in rem* has for its subject property in the jurisdiction and control of the State and that such action proceeds against specific property only. The result of the action must therefore be a judgment which operates upon the property and *has no element of a personal claim or personal liability. Lain,* 79 Ill. App. 3d at 272, 398 N.E.2d at 285, quoting with approval *Hanna v. Stedman.* See also *Austin v. Royal League* (1925), 316 Ill. 188, 194, 147 N.E.2d 106 (citing *Hanna v. Stedman* with approval and holding that a proceeding to determine which of several claimants were entitled to the proceeds of a benefit certificate was not a proceeding *in rem*, even though the funds were paid into court).

The complaint that was filed in the pending case expressly seeks a personal judgment against Allan, for monies he allegedly owes to his deceased mother's estate. His liability for those debts has not been established by any legal proceeding, except for the default judgment entered in the pending case. If Norman as trustee of Trust A or as executor of Lila's estate had obtained a judgment against Allan in a forum in which jurisdiction had not been contested (such as California), and Norman *then* sought to satisfy the judgment by attaching Allan's interest in the trust *res* located in Chicago, such proceeding may well have fit the characterization of an *in rem* action justifying publication service.[3] However, that is not the case pending before us. Confusing the two distinct situations is confusing the ultimate remedy requested in the pending case with the underlying action on the debt.

██ If the action on the debt is characterized as a proceeding *in personam*, and we believe it cannot be viewed otherwise, service by publication is insufficient. (*Bank of Edwardsville v. Raffaelle* (1943), 381 Ill. 486, 45 N.E.2d 651 (Where defendant is a nonresident and the proceeding is *in personam*, publication notice does not give the court original jurisdiction over the person, even if the person receives notice, and the judgment based upon constructive service is void).) If the plaintiffs were able to bootstrap personal jurisdiction over Allan by arguing that the Illinois court can exercise jurisdiction over the *res* of the trust property, there would appear to be no limits on the ability of Illinois litigants to obtain and satisfy judgments of all kinds against nonresidents whenever the nonresident has an interest in property located in Illinois. Presumably, they could then enroll their judgment in the defendants' home States and seek deficiency judgments against them to the extent the Illinois property did not satisfy the judgment. The result in the case at bar is to make defendant personally liable for the balance of a half million dollars, by default, based on the Illinois court's determination that publication in a Chicago newspaper gave Allan reasonable notice of the Illinois litigation.

MINIMUM CONTACTS AS THE TOUCHSTONE OF *IN PERSONAM*
JURISDICTION

██ The United States Supreme Court has commented extensively

---

[3]"Once it has been determined by a court of competent jurisdiction that the defendant is a debtor of the plaintiff, there would seem to be no unfairness in allowing an action to realize on that debt in a State where the defendant has property, whether or not that State would have jurisdiction to determine the existence of the debt as an original matter." *Shaffer v. Heitner* (1977), 433 U.S. 186, 210-211 n.36, 53 L. Ed. 2d 683, 702 n.36, 97 S. Ct. 2569, 2583 n.36.

on the requisites for the exercise of State courts' jurisdiction over nonresidents, and has expressly applied these concepts to actions *in rem* and *quasi in rem*. In *Shaffer v. Heitner* (1977), 433 U.S. 186, 204, 53 L. Ed. 2d 683, 698, 97 S. Ct. 2569, 2580, the court held that matters pertinent to jurisdiction include the "relationship among the defendant, the forum, and the litigation, rather than the mutually exclusive sovereignty of the States." The court held that *all* assertions of State jurisdiction must be evaluated according to the minimum contacts standard of *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154.

The defendants in *Shaffer v. Heitner* had been served by publication after the entry of a sequestration order in accordance with a Delaware statute. Under the statute a defendant's property located in Delaware could be seized by the courts upon motion of a plaintiff. While the Supreme Court noted that *quasi in rem* jurisdiction traditionally had been based on attachment or seizure of property present in the jurisdiction rather than contacts between the defendant and the forum, the court believed that such an approach was no longer sound. The court found, "The case for applying to jurisdiction *in rem* the same test of 'fair play and substantial justice' as governs assertions of jurisdiction *in personam* is simple and straightforward. It is premised on recognition that '[t]he phrase, "judicial jurisdiction over a thing", is a customary elliptical way of referring to jurisdiction over the *interests of persons in a thing*.' " (Emphasis added.) (*Shaffer*, 433 U.S. at 207, 53 L. Ed. 2d at 699, 97 S. Ct. at 2581.) The court recognized that the existence in a State of a defendant's property would be a contact between the forum, defendant, and litigation which in turn would bear on the existence of jurisdiction. The presence of property alone does not, however, support the State's exercise of jurisdiction, particularly where the property is unrelated to the cause of action.

Under the facts of *Shaffer v. Heitner*, neither the presence in Delaware of the nonresident defendants' stock, nor the fact that the nonresidents were officers of a Delaware corporation, provided the necessary contacts to establish the jurisdiction of Delaware courts.

See also *Rush v. Savchuk* (1980), 444 U.S. 320, 62 L. Ed. 2d 516, 100 S. Ct. 571 (Minnesota could not constitutionally exercise *quasi in rem* jurisdiction over a defendant who had no contacts with the State, by simply attaching the contractual obligation of an Illinois insurer to defend and indemnify the defendant in connection with the underlying personal injury lawsuit).

ILLINOIS LONG-ARM STATUTE, SECTION 2—209

■ In Illinois, the exercise of jurisdiction over nonresident defendants takes into account the due process requirements of *International Shoe* and its offspring; however, we also have a long-arm statute that has its own history and gloss. See, *e.g.*, *Green v. Advance Ross Electronics Corp.* (1981), 86 Ill. 2d 431, 436, 427 N.E.2d 1203, 1206 ("A statute worded in the way ours is should have a fixed meaning without regard to changing concepts of due process, except, of course, that an interpretation which renders the statute unconstitutional should be avoided, if possible"); *R.W. Sawant & Co. v. Allied Programs Corp.* (1986), 111 Ill. 2d 304, 311, 489 N.E.2d 1360 (Determination of whether Illinois has jurisdiction over a nonresident requires the courts to look first to the long-arm statute and if jurisdiction is found thereunder, then to the due process clause analysis).

■ In the pending case plaintiffs themselves recognized the need to allege a base for the Illinois court's exercise of jurisdiction over defendant. In their complaint they invoked the Illinois long-arm statute, section 2—209 of the Code of Civil Procedure. (Ill. Rev. Stat. 1987, ch. 110, par. 2—209.) They alleged that by executing certain promissory notes in Chicago defendant "transacted business" in Illinois within the meaning of section 2—209(1). Their burden of proof, as the parties asserting jurisdiction, was therefore to show that (1) defendant transacted business in Illinois; (2) plaintiffs' cause of action arose out of that transaction; and (3) personal jurisdiction over defendant is consistent with due process. *Carlson v. Carlson* (1986), 147 Ill. App. 3d 610, 498 N.E.2d 708.

■ ■ The mere execution of a contract within Illinois is not a sufficient "transaction of business" to come within this provision, however. (See *Met-L-Wood Corp. v. Lifetime Pools, Inc.* (N.D. Ill. 1979), 475 F. Supp. 149, 151) ("Formalities of contract execution are not determinative for purposes of jurisdiction").) Recovery of a debt owed to Lila's estate (which is being probated in California) does not appear to invoke any special ties to Illinois merely because the notes were signed here. It therefore appears that plaintiffs did not establish the first element of their burden of proof under the Illinois statute. Accordingly, the due process analysis does not come into play.

To a large extent, plaintiffs simply avoided their burden of establishing jurisdiction by asserting that the *mode* of service, publication, gave the court jurisdiction under section 2—206 because the relief asked for involved Allan's interest in trust property located in Illinois and that transformed the action into a proceeding *in rem.* They failed to even allege, however, that defendant had any other contacts with

Illinois that would make this State the fair and appropriate forum for deciding his liability on the notes. The location in Illinois of the trust account in which he had an inheritance interest adds nothing to the determination of whether defendant "transacted business" in Illinois. Even assuming defendant's execution of the notes were viewed as transacting business in Illinois, the record is silent as to why, under a due process analysis, the minimum contacts standard would be fulfilled by either the execution of the notes or the location of property in which defendant had an interest.

Both sides skipped the preliminary statutory and minimum contacts analysis in favor of arguing whether the mode of service in this case was proper. Plaintiffs, who first sought to obtain personal service, undoubtedly were aware that the long-arm statute itself specifies that service may be had "upon any person who is subject to the jurisdiction of the courts of this State, as provided in this Section, *** by *personally serving* the summons upon the defendant outside this State." (Emphasis added.) (Ill. Rev. Stat. 1987, ch. 110, par. 2—209(b).) Personal service outside of this State over a nonresident is provided for in section 2—208 of the Code, not under section 2—206. While the long-arm statute does not preclude other modes of service that might apply, it should be evident that not even personal service will vest jurisdiction in the court when the defendant has insufficient contacts with the forum to make him amenable to process in this State.

 Further examination of the long-arm statute reveals that certain types of contacts are considered, without more, to permit Illinois courts to exercise jurisdiction over a nonresident defendant. The transaction of business analysis (subsection 2—209(a)(1)) and commission of a tortious act (subsection 2—209(a)(2)) may well involve lengthy review of case law and a multitude of factual matters. In contrast, subsection 2—209(a)(3) permits jurisdiction to be based on the ownership, use, or possession of any real estate in Illinois. Subsection 2—209(a)(5) similarly allows jurisdiction over nonresidents to be premised on a defendant's maintenance of a marital domicile in Illinois at the time the cause of action arose, in matters affecting divorce and separate maintenance. If the pending case involved real estate or marital status, the long-arm statute would permit the Illinois courts to assert their jurisdiction over defendant's person. In such a case publication service could be appropriate because the matter would be one "affecting property or status in the jurisdiction of the court." Nothing in the long-arm statute, however, gives Illinois jurisdiction over Allan based solely on his interest in the personal property located in the Chicago bank.

If we were to rule that Illinois courts could enter personal judgment based on defendant's beneficial interest in the trust account, the presence of tangible or intangible personal property of many types would subject a nonresident to Illinois jurisdiction. A California investor who keeps certificates of deposit in Illinois banks or the Texas owner of a partnership interest in an Illinois venture potentially could suffer large default judgments based solely on that tenuous contact with Illinois. If we further sanctioned publication notice as a mode of service in suits requesting personal judgments against nonresident defendants we would create judicial havoc. As previously noted, the attachment of defendant's property *following* an adjudication by a court of competent jurisdiction is another matter. In the pending case the trial court was asked, *as an original matter*, to adjudicate the debt Allan owed Lila's estate and *then* to attach his interest in Trust A to satisfy the debt.

To accept plaintiffs' reasoning, we would travel a complete circle. We would start the jurisdictional analysis by noting that Illinois is the location of the Trust A account. We would find under section 2—206 that service by publication is proper in any action involving property in the jurisdiction of the court and interpret this to mean that the Trust A account was within the jurisdiction of the court. We would conclude that the basis of the court's jurisdiction—this trust account— is also the basis for invoking publication service, since the lawsuit involves defendant's property, the proceeds of the trust account. Such circular argument may have a superficial appeal, being easy to apply, but it certainly unravels the constitutional and statutory restraints on Illinois' assertion of jurisdiction over nonresidents.

We conclude that the trial court did not acquire *in personam* jurisdiction over Allan, under section 2—209(b) of the long-arm statute. Therefore, mere publication of notice of the lawsuit could not have vested jurisdiction in the trial court to adjudicate Allan's personal liability on the debt. Service of process on a nonresident is merely the means by which he or she is given reasonable notice that a lawsuit in the Illinois court has been filed. Absent a proper basis for adjudicating Allan's liability for the monies alleged to be owing, the trial court lacked power to execute the default judgment by way of freezing the trust account assets and ordering them to be used to satisfy a portion of the judgment.

For the foregoing reasons, we vacate the trial court's judgment against Allan Kotlisky, reverse the order which denied the motion to quash service and vacate the default judgment, and remand to the trial court with instructions to enter an order quashing service of pro-

cess and dismissing the lawsuit for want of personal jurisdiction over Allan Kotlisky.

Vacated and remanded.

JIGANTI and JOHNSON, JJ., concur.