STEPHEN JAMES BURNHOPE, on his own Behalf and as Representative Underwriter on Behalf of Certain Underwriters and Syndicates at Lloyds London, *et al.*, Plaintiffs-Appellees, v. NATIONAL MORTGAGE EQUITY CORPORATION *et al.*, Defendants-Appellants (Arthur J. Gallagher and Company, Defendant).

First District (4th Division)   No. 1—90—0143

Opinion filed December 27, 1990.

Keck, Mahin & Cate, of Chicago (Alexander D. Kerr, Jr., and Michael J. Sreenan, of counsel), for appellants.

McCullough, Campbell & Lane, of Chicago (Dennis L. Frostic, Steven R. Smith, and Robert B. Baker, of counsel), for appellees.

JUSTICE LINN delivered the opinion of the court:

This action for declaratory judgment was filed by a group of underwriters and insurance companies (collectively referred to as Lloyd's London or plaintiffs). They seek a determination that defendants National Mortgage Equity Corporation (NMEC) and David A. Feldman, NMEC's president and majority shareholder, are not entitled to fidelity insurance coverage pursuant to certain "finance company blanket bonds." Alternatively, plaintiffs seek a declaration that if coverage under the bonds exists, defendant Arthur J. Gallagher & Co. is liable to and must indemnify plaintiffs for whatever amounts plaintiffs must pay in losses to third parties. The merits of this declaratory judgment action are not in issue, however; instead, we are asked to determine whether the Illinois courts have personal jurisdiction over the defendants.

For the reasons that follow, we affirm the trial court's determination that it has jurisdiction and remand for further proceedings.

BACKGROUND

The underlying controversy arises out of NMEC's organization of pools of secured real estate loans and, in connection therewith, NMEC's marketing of "mortgage pass-through certificates" to certain financial institutions. The facts relating to the jurisdictional issues center on NMEC's procuring of blanket bond coverage insur-

ance from plaintiffs through an insurance broker, Arthur J. Gallagher & Co., which is located in Rolling Meadows, Illinois.

According to the complaint, plaintiffs are certain underwriters and syndicates at Lloyd's London, and several additional insurance companies, which collectively issued the finance company blanket bonds that are in issue in this lawsuit. NMEC is a Delaware corporation with its principal place of business located in Palos Verdes Estates, California. Feldman, a resident of California, is the president, treasurer, and majority shareholder of the company. Gallagher is an Illinois corporation with its principal place of business in Rolling Meadows.

Defendants NMEC and Feldman appeal from the trial court's determination that Gallagher acted as their agent or broker in acquiring the bond coverage from plaintiffs and that Gallagher conducted sufficient activities in this State to justify a finding of personal jurisdiction under the Illinois long-arm statute. Ill. Rev. Stat. 1987, ch. 110, par. 2—209.

In 1982, NMEC organized pools of real estate loans secured by first or second deeds of trust on residential real estate located in States other than Illinois, primarily in Texas and California. NMEC then sold "mortgage pass-through certificates" to various financial institutions. Each certificate represented an undivided participation interest in an individual pool of mortgage loans. The holder of a given certificate was entitled to receive interest thereon at a fixed rate regardless of the rates that were being paid by individual mortgagors in the pool. Two banks, Wells Fargo Bank and Bank of America, were trustees for the mortgage pools in NMEC's certificate program. The trustee banks were obligated to review the documentation provided as to each mortgage in order to determine whether it complied with the standards set out in the pooling and servicing agreements. The branches of these two banks involved in this litigation are located in California.

NMEC has no office, address, or telephone number in Illinois and does not own any property in this State. NMEC did not sell any of the mortgage certificates to any Illinois individuals or corporations. According to NMEC, it never transacted any business in this State after 1980.

It is uncontested that Thomas Gallagher, an employee of Arthur Gallagher & Co., acted as the broker or "contact person" between NMEC and the London-based underwriters, in connection with the blanket bond coverage. Gallagher conducted his business activities from the Rolling Meadows location. In his capacity as broker, he ob-

tained and transmitted information from NMEC and Feldman in California to the London insurers.

The insurance coverage in issue is part of the "finance companies blanket bond" in effect for the year 1983 (the 1983 bond) and the renewal of that bond for the following year (the 1984 bond). The 1984 bond was cancelled effective July 13, 1984. The particular coverage that is the subject of this controversy is for "[l]oss resulting directly from one or more dishonest or fraudulent acts of an [e]mployee" as defined in the insuring agreement, an apparently standard form of fidelity insurance.

In 1985, three lawsuits were filed in the Federal District Court for the Northern District of California. These suits were brought by financial institutions that had purchased the pass-through certificates. The complaints alleged fraud in connection with the sale of the certificates, as well as alleged violations of Federal securities laws and racketeering laws (RICO). Among the named defendants in those suits are the trustee banks, Wells Fargo and Bank of America. The latter bank then filed an action in the Central District of the Federal court in California, suing NMEC, Feldman, and others, and alleging that the defendants defrauded the purchasers of the certificates by misrepresenting the value of the certificates and the value of the real estate upon which the residential loans were made. This lawsuit asserts causes of action based on Federal securities law, RICO, and the California Corporation Code.

The three Federal actions pending in the Northern District of California were consolidated with the one filed in the Central District and were assigned a single number. Since then, additional, related actions have been consolidated therewith.

In response to these various claims pending against them, NMEC and Feldman sought defense and indemnification from plaintiffs under the fidelity coverage of the bonds. Thereafter, on July 1, 1987, plaintiffs filed the pending declaratory action in the circuit court of Cook County. The defendants were unsuccessful in their attempt to remove the case to the Federal court sitting in the Northern District of Illinois.

On December 30, 1988, NMEC and Feldman filed a special and limited appearance and motion to dismiss for lack of jurisdiction. The parties took discovery limited to the personal jurisdiction issues and filed memoranda with the court. Plaintiffs argued that the court had personal jurisdiction over NMEC and Feldman, either because defendants had waived their special and limited appearance by raising nonjurisdictional matters, or because Gallagher acted as

the agent of NMEC and Feldman. Under the agency theory, Gallagher's contacts with Illinois would be imputed to the California defendants. Defendants denied that they had waived the issue and argued that Gallagher was plaintiffs' agent rather than defendants'. Further, NMEC and Feldman argued that under either the long-arm statute or the minimum contacts analysis, none of Gallagher's actions were sufficient to form the basis of jurisdiction in Illinois.

The trial court ruled that NMEC and Feldman had not waived their challenge to jurisdiction and that Gallagher was the agent of NMEC such that his activities as agent conferred jurisdiction under the long-arm statute. The court further found that Feldman was an insured under the bonds and thus his relationship to Gallagher was identical to that of NMEC, so that jurisdiction over Feldman was also proper.

OPINION

I

We initially dispose of the waiver argument. Although plaintiffs cite cases in support of their assertion that any act going beyond a challenge to personal jurisdiction constitutes a general appearance, they do not explain why the trial court's express finding on this issue is incorrect or an abuse of discretion. Instead, they focus on two grounds for finding waiver. First, they assert that when defendants drew the court's attention to a "forum selection clause" in the bonds, NMEC and Feldman were invoking the court's jurisdiction to construe the documents and grant affirmative relief. Second, they state that because NMEC and Feldman asked the court to consider a *forum non conveniens* argument at the same time the jurisdictional issue was to be decided, the special and limited appearance was transformed into a general appearance.

■■ Our review of the record reveals that NMEC and Feldman did not waive their challenge to the Illinois court's jurisdiction. The trial court noted that defendants referred to the forum selection clause "solely for the purpose of objecting to jurisdiction and thus it does not constitute a general appearance." We agree. See *Kotlisky v. Kotlisky* (1990), 195 Ill. App. 3d 725, 731-32, 552 N.E.2d 1206; see also *Japax, Inc. v. Sodick Co.* (1990), 186 Ill. App. 3d 656, 661, 542 N.E.2d 792.

As for the presence of the *forum non conveniens* issue in memoranda presented to the trial court, the judge explained:

"[T]he inclusion of that argument in the brief was discussed

in open court and the Court determined that it could be included for the Court's convenience.

At that time the plaintiff did not object. In particular, what occurred was that on February 24, 1989, defendant's counsel raised the possibility of including the Forum Non Conveniens argument in his brief because the basis for the [argument] involves similar issues as are involved in the argument concerning the application of the Long-Arm Statute to this case.

The Court agreed with the defendant that in order to avoid lengthy drawn captive briefs, that this generally would be appropriate and the Court stated at that time that it affected to decide the Long-Arm Statute first before reaching the Forum Non Conveniens issue.

On March 21, 1989, the Court allowed the plaintiff, however, to file a brief on the Long-Arm issue alone since plaintiff [believed] that confusion might result by filing both briefs.

\* \* \*

Accordingly, the Court finds that the inclusion of the Forum Non Conveniens Argument in defendant's brief, which was done for the Court's convenience without objection, did not waive the special and limited appearance filed by the Defendants."

In view of the trial court's express findings, we see little merit in plaintiffs' assertion of waiver. While the filing of a *forum non conveniens* motion might be considered a waiver of a special and limited appearance in some situations (see *In re Marriage of Kelso* (1988), 173 Ill. App. 3d 746, 527 N.E.2d 990), we cannot agree with plaintiffs that waiver occurred here, under these specific facts. Accordingly, we see no reason to disturb the trial court's finding on this issue.

## II

The dispositive issue in this appeal is whether the trial court correctly found that Gallagher was the agent of NMEC and Feldman and whether Gallagher's activities in Illinois laid a sufficient foundation for jurisdiction in this State.

## A

■ Under our long-arm statute, if a person acts as an agent on behalf of another, the agent's jurisdictional contacts with Illinois are imputed to his principal. (Ill. Rev. Stat. 1989, ch. 110, par. 2—209.)

Thus, if Gallagher is deemed the agent of the California defendants, his activities in Illinois will be charged to them. The scope and nature of Gallagher's duties, therefore, become relevant to the initial question of his role as agent.

■■ ■ The question of agency generally is one of fact. (See *Lazzara v. Howard A. Esser, Inc.* (7th Cir. 1986), 802 F.2d 260.) As the court in *Lazzara* noted, an insurance broker is one who procures insurance and acts as the middleman between the insured and insurer. The term "insurance agent" refers to a person with a fixed and permanent relationship to the insurance company. Such agent is considered to represent the company and has certain duties and allegiances to that company. (802 F.2d at 264.) On the other hand, a broker may be considered as the agent of the insured under certain circumstances. For example, if the insured has called the broker into action, retained control over his or her actions, and if the broker acts in the insured's interest, the broker may be considered as the agent of the insured, even if the broker's commission is deducted from the premiums charged by the insurance company. See, *e.g., Lazzara*, 802 F.2d 260 (Insurance broker who had acted on behalf of insured for many years was found to be his agent, having fiduciary obligations to insured, and therefore was liable for his failure to comply with instructions to purchase and maintain a certain amount of insurance coverage); *Petty v. Cadwallader* (1985), 135 Ill. App. 3d 695, 482 N.E.2d 225 (Loan broker who acted on behalf of defendants in obtaining loan commitment was considered defendants' agent for that purpose); *Roby v. Decatur Steel Erectors, Inc.* (1978), 59 Ill. App. 3d 720, 375 N.E.2d 1355 (Insurance agent generally represents the insurer and broker generally represents insured; unauthorized acts of broker are not binding on insurance company).

Thomas Gallagher's deposition in the record reveals the following: Gallagher's understanding was that he was acting as NMEC's broker in attempting to place insurance coverage. As a broker, he was to "solicit and obtain information for [his] customers *** and place those coverages with a variety of different insurance companies." It was the London office of Arthur Gallagher & Co., however, that "had access to the broker who broker[ed] it to the underwriters." According to Thomas Gallagher, NMEC could have worked with any of the nationwide Gallagher & Co. offices, which in turn would have worked with the London office in the same way that the Rolling Meadows, Illinois, office did. Lloyd's London paid Gallagher's company its commission. NMEC did not pay any fee for

Gallagher's procuring the bonds; instead, Gallagher was entitled to deduct a percentage from the premiums that NMEC paid. This commission was negotiated by Gallagher and the London-based underwriters.

Regarding the specific acts that Thomas Gallagher performed in connection with the bond coverage, he stated that he "made contact with [NMEC] and sent applications to them, which [were] completed, and we forwarded them to Lloyd's." Thomas Gallagher also spoke to David Feldman over the telephone and obtained a resume' from Feldman to forward to London. Lord, Bissell & Brook, NMEC's corporate counsel at the time, also provided "tremendous amounts of material." After coverage was "bound," Gallagher forwarded descriptions of coverages to Feldman and obtained and forwarded the policies.

The first bond, for one year, was renewed pursuant to another application from NMEC in December 1983. Initially, Lloyd's was unwilling to renew, but after NMEC agreed to provide an independent inspection of its operations for insurance purposes, the bond was renewed. Gallagher participated in these negotiations also.

The trial court concluded that "Gallagher was defendant's agent in pursuing and obtaining the bonds which are at issue in this case. The defendants chose Arthur Gallagher's Illinois office. *** Defendants asked *** Thomas Gallagher to find the bonding for them on defendant's behalf. Thomas Gallagher obtained the bonds and negotiated for their renewal."

We do not find the trial court's conclusion to be against the manifest weight of the evidence. NMEC needed a broker to find an insurer and selected Gallagher. Thomas Gallagher acted at the direction of NMEC and Feldman and would not have been able to place the coverage without their approval. While the actual payment for the services was in the form of a deduction from the premiums NMEC paid to the underwriters, we do not believe this one factor destroys the agency relationship between Gallagher and defendants. See *Lazzara*, 802 F.2d 260.

■■ ■ In general, a broker is viewed as the agent of the party who engages him for a particular purpose, in furtherance of that party's interest. A broker may act on his own account, as an independent contractor, or he may act as agent for both parties to a transaction at different times. We do not agree, however, with NMEC's characterization of Gallagher as plaintiffs' agent. Gallagher not only placed the insurance at NMEC's and Feldman's request but he also participated in persuading Lloyd's London to renew cov-

erage in 1984, after it had expressed reluctance to do so. That Gallagher both received information from and forwarded information to plaintiffs does not make him their agent. On the whole, the record supports the trial court's determination that Gallagher acted on behalf of defendants, and therefore acted as their agent for purposes of imputing his acts to NMEC to establish jurisdiction in Illinois under the long-arm statute.

### B

NMEC and Feldman alternatively argue that even if Gallagher were their agent, his contacts with Illinois were insufficient to establish jurisdiction because he acted only as a conduit for information between the parties. Under this theory, the "transaction of business" between plaintiffs and NMEC and Feldman occurred in London and California, but not Illinois.

■■ ■ Under section 2—209 of the long-arm statute, anyone who transacts business in Illinois, personally or through an agent, is amenable to process in this State. In *Petty v. Cadwallader* (1985), 135 Ill. App. 3d 695, 482 N.E.2d 225, a loan broker based in Illinois sued the nonresident defendants for breach of contract after defendants refused to pay his contractual fee for procuring a loan commitment on their behalf. Like Thomas Gallagher, the loan broker sent out documents and made telephone calls from his office in Illinois. Because the Indiana defendants had engaged the broker to negotiate financing on their behalf, the majority of the court held that the broker was their agent for the purpose of obtaining the loan commitment. Accordingly, his activities in Illinois were imputed to the defendants.

In *Petty*, the court analyzed various factors to consider in determining whether the defendants' contacts with Illinois were sufficient to support long-arm jurisdiction and concluded that they were. See also *Scovill Manufacturing Co. v. Dateline Electric Co.* (7th Cir. 1972), 461 F.2d 897 (under Illinois law, personal jurisdiction over a nonresident defendant was proper where his agent was present in Illinois while engaging in precontractual negotiations on behalf of defendant); *cf. Konicki v. Wirta* (1988), 169 Ill. App. 3d 21, 523 N.E.2d 160, *appeal denied* (1988), 122 Ill. 2d 576, 530 N.E.2d 247 (California residents who exchanged telephone calls and correspondence with Illinois plaintiffs were not subject to the jurisdiction of Illinois courts, where the negotiations for a loan began in California, was interrelated to California property, the note was executed in California, and it did not appear that defendants would

expect the benefits and protection of Illinois law to apply).

NMEC and Feldman disagree with plaintiffs that Gallagher's activities in Illinois on their behalf were "substantial," instead contending that any contacts attributed to them in Illinois were random and fortuitous. This argument, however, ignores the fact that they chose an Illinois-based broker to assist them in obtaining the bond coverage. NMEC and Feldman could have used any of Arthur Gallagher Co.'s offices, including the one in California. The argument that their use of the Illinois office was "fortuitous" may be true, but it does not change the jurisdictional issue. Their corporate attorneys, Lord, Bissell, and Brooks were located in Illinois, which may well have influenced their decision to use an Illinois broker because of the likelihood that the law firm had substantial records or information to assist the broker in procuring the bond coverage. In any event, the trial court determined that Gallagher's activities in Illinois were significant enough to invoke the jurisdiction of the courts of this State.

We agree with the trial court. The record establishes that Thomas Gallagher, acting in furtherance of the interests of NMEC, was responsible for the procurement of the insurance in issue. He testified in his deposition that he transferred pertinent information between the parties, discussed matters with Feldman over the telephone, and participated in the negotiations that led the London underwriters to renew bond coverage in 1984. Gallagher was defendants' "presence" in Illinois, and he was instrumental in obtaining and renewing the bond coverage pursuant to the direction of NMEC and Feldman. We conclude that through Gallagher, NMEC and Feldman transacted a portion of their business—procuring bond coverage—in Illinois. We also find that Gallagher's participation in the transaction was substantial because NMEC could not have gone directly to the London underwriters to obtain the insurance. In his deposition, Thomas Gallagher testified that the London office was "not a retail broker. They only deal with insurance agents and brokers in the United States or worldwide." Therefore, even though the blanket bonds themselves had little connection with Illinois, a significant part of their negotiation took place in this State.

■ Under the above view of the nature and number of contacts with Illinois, it is immaterial that NMEC and Feldman did not own property in this State; that none of the residential real estate mortgages in the pools encumbered Illinois land; and that none of the pass-through certificates were marketed in Illinois. While such facts may be relevant to the more general, "doing business" analysis

(see, *e.g., Radosta v. Devil's Head Ski Lodge* (1988), 172 Ill. App. 3d 289, 526 N.E.2d 561), the "transaction of business" standard of the long-arm statute recognizes that the cause of action itself must arise from the defendants' contacts with the forum State in connection with the particular transaction under review: here, the parties' negotiation of the insurance contract.

█▌ Once the court makes the determination that the long-arm requirements have been satisfied, the court must further consider the due process requirements of the minimum contacts analysis. See *R.W. Sawant & Co. v. Allied Programs Corp.* (1986), 111 Ill. 2d 304, 311, 489 N.E.2d 1360, 1364 (describing two-part test for personal jurisdiction in Illinois); *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 316, 90 L. Ed. 95, 102, 66 S. Ct. 154, 158 (formulating minimum contacts standard).

█▌ In our view, the two steps of the analysis need not be rigidly separated because both the statutory "transaction of business" test and the constitutional limitation require that there be a significant connection among the contacts of defendant, the forum State, and the litigation. As the court noted in *Jabcobs/Kahan & Co. v. Marsh* (7th Cir. 1984), 740 F.2d 587, 592: "Where, as here, the dispute is said to 'arise from' the jurisdictional act or acts, the 'relationship among the defendant, the [forum] and the litigation is the essential foundation' of personal jurisdiction, *Helicopteros Nacionales de Colombia, S.A. v. Hall*[, 466 U.S. 408, 414], 104 S. Ct. 1868, 1872, 80 L. Ed. 2d 404 (1984) *** and must be such that it is reasonable to subject defendant to suit in the forum state. *Worldwide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292-93, 100 S. Ct. 559, 564-65, 62 L. Ed. 2d 490 (1980)."

We conclude that the California defendants, through Gallagher, maintained sufficient contacts with Illinois and the subject matter of the litigation to satisfy the requisites of due process.

We do not suggest that whenever a nonresident of Illinois chooses an Illinois resident to perform a service that arguably could be performed anywhere, Illinois automatically will have personal jurisdiction over the nonresident. (See *Orton v. Woods Oil & Gas Co.* (7th Cir. 1957), 249 F.2d 198 (Louisiana resident was not amenable to Illinois jurisdiction in a lawsuit by an engineer and attorney who performed professional services for him in Chicago); *Davis v. Nehf* (1973), 14 Ill. App. 3d 318, 302 N.E.2d 382 (New York real estate broker who assisted the Illinois owner of a commercial building in finding tenants was not an "agent" of the Illinois defendant for purposes of imputing the broker's actions in New York to

defendant).) In fact, we are not unsympathetic to plaintiffs' view that California may be a more suitable forum for resolving this controversy. *Forum non conveniens* issues are not before us, however, and we express no opinion on any matter beyond the bare jurisdictional requisites for maintaining suit in this State.

## C

■■■ The final issue for our consideration is whether Illinois courts have jurisdiction over Feldman, individually. Under the fiduciary shield doctrine, an officer of a corporation may be shielded from the forum State's jurisdiction if his or her contacts with the forum State are limited to those performed on behalf of the corporation. (See *Olinski v. Duce* (1987), 155 Ill. App. 3d 441, 444, 508 N.E.2d 398, 400 ("A conclusion that a foreign corporation is subject to Illinois jurisdiction does not require the further conclusion that an employee, shareholder, president, or member of the board of directors of that corporation is also subject to Illinois jurisdiction"); *Washburn v. Becker* (1989), 186 Ill. App. 3d 629, 542 N.E.2d 764, *appeal denied* (1989), 127 Ill. 2d 643, 545 N.E.2d 134 (application of fiduciary shield doctrine is discretionary, and equitable principles governing application should be analyzed in light of the particular facts of the case).) For the latest formulation of the fiduciary shield doctrine, as well as the applicability of the Illinois due process clause to the question of personal jurisdiction under the long-arm statute, see *Rollins v. Ellwood* (1990), 141 Ill. 2d 244.

In the pending case, Feldman's actions as officer of NMEC ordinarily would give rise to the fiduciary shield doctrine under such cases as *Olinski*. Nevertheless, plaintiffs urge us to hold that Feldman is *not* entitled to the protection of the doctrine because he is the alleged "alter ego" of NMEC and therefore all actions he undertook on behalf of the corporation were undertaken for his own benefit as well. See *Washburn*, 186 Ill. App. 3d 629, 542 N.E.2d 764 (if corporation is a sham or the alter ego of defendant, corporate shield doctrine should not be employed to defeat jurisdiction).

Plaintiffs argue that since Feldman took the fifth amendment during his deposition, refusing to answer virtually every question put to him, he cannot invoke the fiduciary shield doctrine. In other words, Feldman cannot rely on his own refusal to answer relevant questions concerning his relationship with NMEC to form the basis for shielding himself from personal jurisdiction under the doctrine. Plaintiffs further contend that since Feldman has made a demand for personal insurance coverage under the policies, he cannot now

take the opposite position that he acted only as the representative of NMEC.

■■ ■ Like the courts in *Olinski* and *First National Bank v. Boelcskevy* (1984), 126 Ill. App. 3d 271, 466 N.E.2d 1182, we believe that the question of personal jurisdiction and personal liability should not be blurred. Without expressing any opinion on the ultimate merits of the positions and defenses the parties may present, we find that the fiduciary shield doctrine should not apply in this case. Plaintiffs have asserted the alter ego theory in their pleadings. The record indicates that an outside investigatory agency determined that Feldman owned 84% of NMEC's stock and that the board of directors did not play a vital role in managing the company. While there is no competent proof at this point that the corporate veil should be pierced, we believe that Feldman's contacts with Illinois through Gallagher are sufficient, along with the unrebutted allegations that NMEC is his alter ego, to conclude that Illinois courts have jurisdiction over his person as well as over the corporate entity of NMEC. See *Hyatt International Corp. v. Inversiones Los Jabillos, C.A.* (N.D. Ill. 1982), 558 F. Supp. 932, 936; *cf. Torco Oil Co. v. Innovative Thermal Corp.* (N.D. Ill. 1989), 730 F. Supp. 126, 135-40.

For the foregoing reasons, we affirm the rulings of the trial court and remand this cause for further proceedings.

Affirmed and remanded.

JOHNSON and JIGANTI, JJ., concur.