**Lia G. BRUJIS, on behalf of herself and all others similarly situated, Plaintiff,**

v.

**Mel SHAW; Thomas Isgrigg; and United States Credit Bureau, Inc., Defendants.**

**No. 94 C 4611.**

United States District Court, N.D. Illinois, Eastern Division.

Feb. 9, 1995.

Daniel A. Edelman, Cathleen M. Combs, Tara Leigh Goodwin, James Eric Vander Arend, Michelle Ann Weinberg, O. Randolph Bragg, Edelman & Combs, Chicago, IL, Robert Louis Arles, New York City, for Lia G. Brujis.

Daniel P. Shapiro, Steven A. Levy, Goldberg, Kohn, Bell, Black, Rosenbloom & Moritz, Ltd., Timothy R. Yuiell, Lawrence Friedman Law Offices, Chicago, IL, for Mel Shaw and Thomas Isgrigg.

Daniel P. Shapiro, Steven A. Levy, Goldberg, Kohn, Bell, Black, Rosenbloom & Moritz, Ltd., Timothy R. Yuiell, Lawrence Friedman Law Offices, Chicago, IL, Lloyd D. Dix, Law Offices of Lloyd Douglas Dix, Van Nuys, CA, for U.S. Credit Bureau, Inc.

### MEMORANDUM AND ORDER

MORAN, Chief Judge.

Plaintiff Lia Brujis brings this action against United States Credit Bureau, Inc. (USCB), a California corporation, and two of its officers, Mel Shaw and Thomas Isgrigg (the individual defendants). Plaintiff alleges that the defendants misled her and other consumers in violation of the federal Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. §§ 1692–1692o. Before us is the motion of the individual defendants to dismiss

the complaint for lack of personal jurisdiction. For the reasons set forth below, the motion is denied.

## FACTS[1]

The facts relevant to this motion are few. Brujis is suing USCB, Shaw and Isgrigg, individually, and on behalf of a class of consumers. She claims USCB, a debt collection agency whose senior officers included Shaw and Isgrigg, engaged in deceptive practices in violation of the FDCPA. The company used the name United States Credit Bureau to mislead unsophisticated consumers into thinking that the company is affiliated with or sanctioned by the federal government, that it is a credit reporting agency, and that it will add negative information to consumers' credit histories if they fail to comply with USCB's demands for payment—none of which is true. She seeks statutory damages for these violations.

At the time of the events in question Shaw was president of USCB and owned the vast majority of its stock. Isgrigg was the company's vice-president and ran one of its offices. Shaw has been a resident of California for his entire life. Isgrigg has been a resident of California for 47 years, and before that resided in Wisconsin. Neither man conducts personal business in Illinois, banks in Illinois, has an office or mailing address in Illinois, or owns real estate in Illinois. To the extent they have had any contacts with Illinois relating to the subject matter of this suit, those contacts were made solely through business dealings involving USCB.

## DISCUSSION

■ Personal jurisdiction in federal question cases is authorized by the service of process provisions of Rule 4 of the Federal Rules of Civil Procedure. Section (k) of that rule provides that "[s]ervice of summons or filing a waiver of service is effective to establish jurisdiction over the person of a defendant who could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located, or ... when authorized by a statute of the United States." Shaw and Isgrigg argue that because there is no statute here authorizing special service methods, the court has jurisdiction only if an Illinois court would have jurisdiction. Illinois has a long-arm statute that grants its courts personal jurisdiction to the maximum extent permitted by the Illinois constitution and the Constitution of the United States. 735 ILCS 5/2–209. Shaw and Isgrigg are covered by § 2–209 because under both constitutions the tortious acts they allegedly committed in Illinois—authorizing and directing the use of the misleading USCB name in violation of the FDCPA—are sufficient to confer jurisdiction.[2] *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) ("minimum contacts" sufficient for federal due process); *Arthur Young & Co. v. Bremer,* 197 Ill.App.3d 30, 143 Ill. Dec. 736, 741, 554 N.E.2d 671, 676 (App.Ct. 1990) (§ 2–209 requires plaintiff to allege only that defendant "performed an act or omission which caused an injury in Illinois, and that the act or omission was tortious in nature"); *Heritage House Restaurants, Inc. v. Continental Funding Group, Inc.,* 906 F.2d 276, 282 (7th Cir.1990) (holding that jurisdiction in misrepresentation and deceptive business practices case was appropriate under § 2–209, based on nonresident defendant's alleged misrepresentations to an Illinois corporation about whether a deposit would be insured). However, Shaw and Isgrigg argue that the court lacks jurisdiction because Illinois' fiduciary shield doctrine exempts them from the long-arm statute. We must decide whether the doctrine applies on these facts.

The fiduciary shield doctrine was first recognized by the Illinois Supreme Court in *Rollins v. Ellwood,* 141 Ill.2d 244, 152 Ill.Dec. 384, 565 N.E.2d 1302 (1990). *Rollins* arose after defendant Ellwood, a Maryland police officer, traveled to Illinois to take custody of plaintiff Sylvester Rollins and returned with

---

1. Unless otherwise noted, the facts relevant to this case are not in dispute. They are recited here as they appear in the memoranda of the parties. *See* Defendants' Memorandum at 1–2; Plaintiff's Memorandum at 1–4.

2. Shaw and Isgrigg do not seriously contest this point. *See* Defendants' Memorandum at 4 (spending only two sentences on the issue).

him to Baltimore. Rollins had been arrested in East St. Louis, Illinois, and the police there had discovered an outstanding fugitive warrant for one Ruchell Rollins issued by the Baltimore police. Believing that the plaintiff was Ruchell Rollins, the East St. Louis police held him until the Baltimore police, in the form of Ellwood, could take him back to Maryland. There it was determined that Rollins was not the person named in the fugitive warrant and he was allowed to return to Illinois. He sued Ellwood and other defendants for negligence and the intentional torts of kidnapping, unlawful restraint and conspiracy, and sought to establish personal jurisdiction under § 2–209. Ellwood filed a motion to quash service of process, arguing that the circuit court lacked personal jurisdiction over him because he was protected by the fiduciary shield doctrine. *Id.* at 386–88, 565 N.E.2d at 1304–06. The doctrine, which at the time of *Rollins* had already been adopted by several decisions of the Illinois Appellate Court, "prevents courts from asserting jurisdiction over a [nonresident] on the basis of acts taken by that person not on his own behalf, but on behalf of his employer." *Id.* at 388, 565 N.E.2d at 1306.

The *Rollins* court undertook its own analysis of the doctrine to determine whether it should be accepted in Illinois. It noted that the Appellate Court cases adopting the doctrine had not addressed the due process clause of the Illinois constitution, but had focused only on federal due process standards. *Id.* at 399–400, 565 N.E.2d at 1317–18. This approach was erroneous, the Supreme Court said, because "the scope of Illinois' long-arm statute may not be co-extensive with the jurisdictional aspect of the Federal due process clause in any particular situation." *Id.* at 397, 565 N.E.2d at 1315. Rather, courts interpreting § 2–209 should take into account the due process standards embodied in the Illinois constitution. Under those standards, and "the tenets of our concept of the jurisdictional power of the Illinois courts," the court held that it was "unfair and unreasonable ... to assert personal jurisdiction over an individual who [sought] the protection and benefits of Illinois law, not to serve his personal interests, but to serve

those of his employer or principal." 152 Ill.Dec. at 400, 565 N.E.2d at 1318.

It is clear that *Rollins* governs this dispute. Yet, the parties differ over its interpretation. Shaw and Isgrigg claim that because they were acting only on behalf of USCB, not on their own behalf, they are protected by the fiduciary shield doctrine (Dft's Mem. at 4–7). Brujis reads *Rollins* more narrowly, arguing that the fiduciary shield protects only those who both acted on their employer's or principal's behalf *and* had no discretion over their actions. She claims that since Shaw and Isgrigg were principal officers of USCB they had discretion to decide whether to continue using the name United States Credit Bureau to deceive customers and that they should not be protected by the fiduciary shield (Plf's Mem. at 7–10).

Fiduciary shield cases following *Rollins* do not conclusively settle whether a fiduciary's exercise of discretion automatically removes him from the protection of the shield. The cases that have addressed the issue generally conclude that the shield should not apply where the employee has the power to decide what is to be done and chooses to commit the acts that subject him to long-arm jurisdiction. *Renner v. Grand Trunk Western Railroad Co.*, 263 Ill.App.3d 547, 204 Ill.Dec. 42, 44, 641 N.E.2d 1, 3 (App.Ct.1994), *appeal denied*, 157 Ill.2d 521, 205 Ill.Dec. 185, 642 N.E.2d 1302 (1994); *People ex rel. Morse v. E & B Coal Co.*, 261 Ill.App.3d 738, 199 Ill.Dec. 597, 603, 634 N.E.2d 436, 441 (App. Ct.1994); *Ruca Hardware, Ltd. v. Chien*, No. 94 C 3635, 1994 WL 548196, at *5 (N.D.Ill. Oct. 4, 1994); *Lexecon Inc. v. Milberg Weiss Bershad Specthrie & Lerach*, No. 92 C 7768, 1993 WL 179789, at *4 (N.D.Ill. May 24, 1993). Indeed, in only one case in which the discretion issue arose did a court reject the idea of an exception to the fiduciary shield for discretionary acts, and it did so only in passing. *Rice v. Nova Biomedical Corp.*, 38 F.3d 909 (7th Cir.1994). The *Rice* court said only that "[i]f [the defendant's] action in coming into Illinois to fire and defame [the plaintiff] was done solely on behalf of [the defendant's employer], he is under the fiduciary shield and this regardless of whether he exercised discretion rather than merely carry-

ing out precise orders mechanically." *Id.* at 912. *Rice*'s statement about discretion was clearly *dictum*, and we do not think that the court intended to settle the issue with a single sentence unsupported by any analysis. Thus *Rice* does not undermine our conclusion that all the courts that have examined the discretion issue have held that the exercise of discretion removes the defendant from the fiduciary shield's protections.

■ Nonetheless, in a great many fiduciary shield cases the discretion issue does not arise at all—the courts consider only whether the out-of-state defendant was acting on the corporation's behalf or on his own. *See e.g., Alpert v. Bertsch,* 235 Ill.App.3d 452, 176 Ill.Dec. 333, 601 N.E.2d 1031 (App.Ct.1992), *appeal denied,* 148 Ill.2d 639, 183 Ill.Dec. 15, 610 N.E.2d 1259 (1993); *Household Commercial Financial Services, Inc. v. Trump,* Nos. 92 C 6920 and 92 C 5010, 1993 WL 389386 (N.D.Ill. Sept. 30, 1993); *Modern Aids, Inc. v. Lil' Drug Store Products, Inc.,* No. 93 C 1714, 1993 WL 239054 (N.D.Ill. June 25, 1993); *Ace Novelty Co. v. Vijuk Equipment, Inc.,* No. 90 C 3116, 1991 WL 150191 (N.D.Ill. July 31, 1991). Thus it is not clear under Illinois law whether discretion is an essential factor to be considered in determining whether the fiduciary shield should be invoked.

■ It is our task to ascertain, as best we can, what the Illinois Supreme Court would do if it were deciding this case. *Todd v. Societe Bic, S.A.,* 21 F.3d 1402, 1405 (7th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 359, 130 L.Ed.2d 312 (1994); *Heller International Corp. v. Sharp,* 974 F.2d 850, 858 (7th Cir.1992). We think that court would consider the extent of the nonresident defendant's discretion an important factor, though not a determinative one, in deciding whether an Illinois court's jurisdiction over him was proper. As the courts that have emphasized discretion have pointed out, the *Rollins* court was impressed by the compulsory nature of Officer Ellwood's actions in Illinois:

> Also, we are not persuaded by the argument ... that asserting personal jurisdiction over an employee who acted in the scope of his employment is justified because the employee is serving his own

financial interests when he performs the tasks imposed upon him by his employer. In practical terms, an employee, especially one in Ellwood's position, has little or no alternative besides unemployment when ordered to enter another State to carry out the wishes of his employer.

*Rollins,* 152 Ill.Dec. at 400, 565 N.E.2d at 1318. Accordingly, we think the *Renner* and *E & B Coal* courts were correct in looking beyond the personal capacity/representative capacity distinction, which, although critical in *Rollins,* was not the only aspect of the decision. Still, *Rollins* did not turn on the issue of discretion; the statement quoted above was only *dictum.* Rather, *Rollins'* underlying holding was that "[j]urisdiction is to be asserted only when it is fair, just, and reasonable to require a non-resident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois." *Id.* at 398, 565 N.E.2d at 1316. This statement suggests a broader approach to the fiduciary shield doctrine than merely asking whether the defendant exercised discretion or whether he was acting in an individual or representative capacity. In each case, a court deciding whether jurisdiction would be appropriate must examine the equities of the situation in light of all the circumstances.

■ The different approaches courts have taken in the wake of *Rollins* can be reconciled according to this fairness standard. Decisions that turn on the representative nature of the defendant's actions emphasize the unfairness of subjecting someone to jurisdiction whose conduct in Illinois was not of his own choosing. Similarly, those that turn on the defendant's use of discretion emphasize that it would *not* be unfair to exercise jurisdiction over someone acting in a representative capacity when he was in a position to decide whether or not to perform acts in Illinois. In both situations, fairness is the key; courts look at the quality and nature of defendants' acts in Illinois to determine whether it would be reasonable to hale them into court based on those acts. The same can be said of the other important group of fiduciary shield cases: those that

refuse to apply the doctrine when the defendant is the alter ego of the entity for which he is a fiduciary, such as a sham corporation. *See e.g., Torco Oil Co. v. Innovative Thermal Corp.,* 730 F.Supp. 126 (N.D.Ill.1989). Courts in those cases reason that although the individual defendant appears to be acting in a representative capacity, "he is in fact pursuing self-interest, and thus it 'will not advance notions of fairness to allow the [defendant] to invoke the protections of the fiduciary shield doctrine.'" *Id.* at 136 (quoting *Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899, 903 (2d Cir.1981)). *Rollins* and its progeny convince us that personal gain, discretionary actions, and ownership of most of a corporation's stock are all significant factors that the Illinois Supreme Court would consider in determining whether to exercise jurisdiction, but the cases also reinforce our conclusion that no single factor is determinative. Rather, the test is whether, on the basis of the defendant's conduct in Illinois or acts affecting Illinois interests, it would be fair to require him to defend an action in Illinois.

 Applying the fairness standard to the present case, we hold that the fiduciary shield doctrine should not protect Shaw and Isgrigg from this court's jurisdiction. Although the two men's contacts with Illinois were made in a representative capacity, Shaw owned the vast majority of USCB's shares and therefore stood to benefit personally from its activities in Illinois. *See Burnhope v. National Mortgage Equity Corp.,* 208 Ill.App.3d 426, 153 Ill.Dec. 398, 406, 567 N.E.2d 356, 364 (App.Ct.1990) (defendant's ownership of 84% of corporation's stock, coupled with plaintiff's allegations that the board of directors did not play a vital role in managing the company and that the corporation was the defendant's alter ego, were sufficient to justify imposing jurisdiction). More importantly, both Shaw and Isgrigg were senior corporate officers in a position to decide whether those contacts should be made at all. Brujis alleges that although they had been warned by the Federal Trade Commission of the deceptive nature of USCB's name, they "knew of, approved, authorized, and directed the use of the misleading name" (Cplt. ¶ 17). In these circumstances we think it is fair and

reasonable to subject Shaw and Isgrigg to our jurisdiction. They made a conscious decision to conduct business in Illinois through allegedly deceptive practices, and they must answer in Illinois for the consequences of that decision. *See Ruca Hardware, Ltd. v. Chien,* No. 94 C 3635, 1994 WL 548196, at *5 (N.D.Ill. Oct. 4, 1994) (where defendants were senior corporate officers who on their own initiative attended meetings in Chicago and allegedly interfered with an Illinois corporation's contract, fiduciary shield doctrine should not apply). The fiduciary shield doctrine is discretionary in nature and should be applied only where equity demands it. *Washburn v. Becker,* 186 Ill.App.3d 629, 134 Ill.Dec. 418, 421, 542 N.E.2d 764, 767 (App. Ct.), *appeal denied,* 127 Ill.2d 643, 136 Ill. Dec. 610, 545 N.E.2d 134 (1989). It would be inappropriate to invoke the doctrine to protect these defendants.

## CONCLUSION

For the foregoing reasons, the individual defendants' motion is denied.