MICHAEL J. FEMAL, Plaintiff-Appellee, v. SQUARE D COMPANY *et al.*,
Defendants (James O'Shaughnessy, Indiv., Defendant-Appellant).

First District (4th Division)   No. 1—07—1990

Opinion filed January 29, 2009.

Foley & Lardner, LLP, of Milwaukee, Wisconsin (Richard S. Florsheim, of counsel), and Foley & Lardner, LLP, of Chicago (Michael M. Conway and Amy P. Purcell, of counsel), for appellant.

Arnold & Kadjan, of Chicago (L. Steven Platt, of counsel), for appellee.

JUSTICE STEELE delivered the opinion of the court:

Michael Femal sued James O'Shaughnessy, a Wisconsin lawyer, for defamation. Femal alleged that the defamation occurred during a meeting in Illinois O'Shaughnessy attended as a representative of his employer. O'Shaughnessy invoked the fiduciary shield doctrine as grounds for his motion to dismiss the claims against him for lack of personal jurisdiction. The trial court denied the motion without conducting an evidentiary hearing. We find that Illinois courts lack jurisdiction over fiduciaries whose contacts with Illinois occurred

solely due to the fiduciaries' employment and not due to their personal interests. Because we find disputed issues of fact will determine whether O'Shaughnessy's personal interests motivated his allegedly tortious conduct in Illinois, we remand for an evidentiary hearing to determine whether the trial court has personal jurisdiction over O'Shaughnessy.

## BACKGROUND

In 1991 Femal prepared patent number 5,038,318 for an automation process developed by his employer, Square D Company (Square D). When Schneider Automation, Inc. (Schneider), purchased Square D, Schneider acquired the patent. Schneider solicited offers for the patent and sold it to the sole bidder, Solaia Technologies (Solaia), in June 2001. Solaia agreed to pay Schneider $100,000 plus 50% of the first $10 million that Solaia earned from enforcing the patent, plus lesser percentages of further earnings. Schneider agreed to permit its employee, Femal, to assist Solaia in proceedings to enforce the patent. Solaia agreed to pay Femal 2% of the amounts Solaia won in such proceedings.

Rockwell International (Rockwell), a Wisconsin corporation, designed and sold a product that, according to Solaia, infringed the patent. *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 568 (2006). Solaia sued Rockwell and several of the corporations to which Rockwell sold the allegedly infringing product. Rockwell sued Schneider for acting in bad faith in prosecuting the patent.

O'Shaughnessy, Rockwell's attorney, traveled to Illinois in April 2003 to discuss the possibility of a settlement with Schneider. He spoke to Larry Golden, counsel for Square D. In response to Solaia's lawsuit, Rockwell raised factual allegations that Femal could best refute. Solaia canceled its percentage fee agreement with Femal and asked him to serve as a witness on Solaia's behalf. Solaia offered to compensate Femal at an hourly rate for his work as a witness. The change to hourly pay significantly reduced Femal's compensation for his work on the patent infringement cases.

Schneider hired outside counsel to investigate the propriety of Femal's original fee agreement with Solaia. In November 2003, Schneider terminated Femal's employment with Square D. Schneider charged Femal with gross failures of professional judgment, misrepresentations to his superiors, and misuse of company assets.

Femal sued Schneider, Square D, O'Shaughnessy, and another employee of Square D. According to the complaint, O'Shaughnessy, in his meeting with Golden, told Golden that Femal violated canons of professional ethics by arranging a percentage fee for his work on

enforcing the patent. Femal also accused O'Shaughnessy of inappropriately making the factual allegations that forced Solaia to cancel the percentage fee agreement. Femal alleged:

> "O'Shaughnessy's intent *** was to interfere with and destroy both defendant SCHNEIDER'S contract of sale of the *** patents with Solaia and the retainer agreement between plaintiff and Solaia, and the revenue streams derived therefrom to both defendant SCHNEIDER and to plaintiff, to advantage the company O'SHAUGHNESSY worked for, Rockwell.
> * * *
> *** O'SHAUGHNESSY'S statements were made maliciously, with an evil motive to injure plaintiff without just cause or excuse."

In response, O'Shaughnessy moved to dismiss the claims against him for lack of personal jurisdiction. According to his affidavit supporting the motion, he never lived in Illinois, he owned no home, office or bank accounts in Illinois, and he transacted no regular business in Illinois. In the meeting with Golden, O'Shaughnessy acted solely as legal counsel for Rockwell. He had no personal interest in Femal's employment with Square D (and Schneider) or his percentage fee agreement with Solaia.

In an affidavit, Femal said O'Shaughnessy persuaded Rockwell not to bid for the patent when Schneider offered it for sale. O'Shaughnessy also persuaded Rockwell's customers not to bid on the patent. Rockwell wound up paying far more in attorney fees for defense of its customers in Solaia's lawsuits than Rockwell would have needed to pay to purchase the patent. Femal said in his affidavit:

> "[O'Shaughnessy] became personally invested in the case way beyond just being an employee of Rockwell—his personal credibility became involved in the case.
> * * *
> *** [Actions in several lawsuits] were all a direct result of Mr. O'Shaughnessy causing Rockwell so much needless expense in relation to the *** patent ***.
> * * *
> *** O'Shaughnessy went to Schneider to complain about me and claimed that my work with Solaia was hurting them ***.
> * * *
> *** O'Shaughnessy filed the anti-trust lawsuit in Milwaukee, WI just to get at me so he could discredit the Solaia litigation and Schneider in an effort to help himself out of many bad decisions that he had personally made regarding the *** Patent Auction and subsequent sale to Solaia.
> * * *
> *** At this point with a favorable [ruling] on the claims and

many of the defendants *** immediately settling in [one of Solaia's patent infringement cases], Mr. O'Shaughnessy definitely wanted to trash me in public because he was looking like a fool for costing Rockwell all of this money for legal fees and settlements ***.

*  *  *

*** [After the meeting between O'Shaughnessy and Golden in April 2003,] Mr. Golden told me that all Mr. O'Shaughnessy did at the alleged settlement discussions about the antitrust case, was talk about my working relationship and contract with Solaia."

The trial court did not hear evidence on the motion. The court found that it had personal jurisdiction over O'Shaughnessy because O'Shaughnessy "presented no evidence that he was compelled by his employer to engage in the conduct about which Femal complains." O'Shaughnessy petitioned for leave to appeal pursuant to Supreme Court Rule 306(a)(3) (210 Ill. 2d R. 306(a)(3)). We denied the petition. Our supreme court instructed us to grant the petition and resolve the appeal on its merits. We now do so.

## DECISION

When the trial court determines jurisdiction solely on the basis of documentary evidence, we review the decision *de novo*. *Stein v. Rio Parismina Lodge*, 296 Ill. App. 3d 520, 523 (1998).

Our supreme court established the relevant jurisdictional principles in *Rollins v. Ellwood*, 141 Ill. 2d 244 (1990). Ellwood, a Maryland police officer, came to Illinois to take Sylvester Rollins to Baltimore based on a fugitive warrant for a man named Ruchell Rollins. After a Maryland court recognized the error and ordered police to release Rollins, Rollins sued Ellwood in Illinois for the intentional tort of kidnaping. Ellwood moved to dismiss, claiming that the fiduciary shield doctrine precluded the exercise of jurisdiction over him. Our supreme court explained: "[T]he fiduciary shield doctrine prevents courts from asserting jurisdiction over a person on the basis of acts taken by that person not on his own behalf, but on behalf of his employer." *Rollins*, 141 Ill. 2d at 253. The trial court did not decide whether Illinois had adopted the doctrine. Instead, the trial court found that the doctrine did not apply because Rollins alleged that Ellwood personally committed the tort in Illinois. *Rollins*, 141 Ill. 2d at 269.

On appeal our supreme court recounted cases that discussed the fiduciary shield doctrine. The court noted that the federal due process clause permitted Illinois to exercise jurisdiction over Ellwood, because Ellwood's intentional and allegedly tortious conduct counted as sufficient minimum contacts with Illinois. *Rollins*, 141 Ill. 2d at 273. The appellate court, in prior decisions, had adopted the fiduciary shield

doctrine as a matter of federal due process. *Rollins*, 141 Ill. 2d at 277. But Illinois's own constitution separately guaranteed due process, and our supreme court held that, despite the federal interpretation of the federal due process clause, the Illinois due process clause did not permit Illinois courts to assert jurisdiction over Ellwood. The court said:

> "Jurisdiction is to be asserted only when it is fair, just, and reasonable to require a nonresident defendant to defend an action in Illinois, considering the quality and nature of the defendant's acts which occur in Illinois or which affect interests located in Illinois. [Citation.]
>
> * * *
>
> We find that it is not fair, just, and reasonable for the Illinois courts to assert personal jurisdiction over one in Ellwood's situation. Ellwood entered into Illinois, and while in Illinois engaged in conduct giving rise to the present cause of action, solely in his capacity as a police officer acting for the Baltimore police department and the State of Maryland. The nature and quality of his actions in Illinois were defined and characterized by his status as a police officer employed by these entities. Because Ellwood's conduct in Illinois was a product of, and was motivated by, his employment situation and not his personal interests, we conclude that it would be unfair to use this conduct to assert personal jurisdiction over him as an individual. Also, we are not persuaded by the argument, raised by various sources, that asserting personal jurisdiction over an employee who acted in the scope of his employment is justified because the employee is serving his own financial interests when he performs the tasks imposed upon him by his employer. In practical terms, an employee, especially one in Ellwood's position, has little or no alternative besides unemployment when ordered to enter another State to carry out the wishes of his employer. Additionally, we see no reason to fashion an exception to the fiduciary shield doctrine that will expose employees who engage in tortious conduct within the scope of their employment to the personal jurisdiction of Illinois courts.
>
> Thus, we find it to be unfair and unreasonable, under Illinois' due process clause and the tenets of our concept of the jurisdictional power of the Illinois courts, to assert personal jurisdiction over an individual who seeks the protection and benefits of Illinois law, not to serve his personal interests, but to serve those of his employer or principal." *Rollins*, 141 Ill. 2d at 275-80.

The appellate court interpreted *Rollins* in *Renner v. Grand Trunk Western R.R. Co.*, 263 Ill. App. 3d 547 (1994). In that case a child sued a railroad engineer from Michigan, alleging that the engineer

negligently ran a train over the child's legs in Illinois. The court distinguished *Rollins* on grounds that Ellwood's employer ordered Ellwood to go to Illinois, and the paramilitary nature of police organizations compelled Ellwood to obey. The engineer, however, "failed to show that the acts giving rise to his status as a defendant in this suit were compelled by the order of his employer." *Renner*, 263 Ill. App. 3d at 551.

Here, O'Shaughnessy came to Illinois at least in part to serve the interests of his employer, Rockwell. He did not show that Rockwell ordered or compelled him to go to Illinois. If the court in *Renner* interpreted *Rollins* correctly, the trial court has jurisdiction over O'Shaughnessy.

We disagree with the interpretation of *Rollins* presented in *Renner*. Our supreme court stated its central holding in *Rollins* concisely: Illinois courts lack personal jurisdiction over any "individual who seeks the protection and benefits of Illinois law, not to serve his personal interests, but to serve those of his employer or principal." *Rollins*, 141 Ill. 2d at 280. The court discussed, and rejected, two suggested limitations on the fiduciary shield doctrine. The fact that the defendant committed a tort (even an intentional tort) in Illinois did not give Illinois courts jurisdiction over him. *Rollins*, 141 Ill. 2d at 280; *cf. Balanced Dynamics Corp. v. Schmitt Industries*, 204 F.3d 683, 697-98 (6th Cir. 2000). Also, the defendant's receipt of payment for his work in Illinois did not give him the kind of personal interest that would undo the protection of the fiduciary shield. *Rollins*, 141 Ill. 2d at 280.

The court explained: "In practical terms, an employee, especially one in Ellwood's position, has little or no alternative besides unemployment when ordered to enter another State to carry out the wishes of his employer." *Rollins*, 141 Ill. 2d at 280. We do not construe this as a limitation on the fiduciary shield to only those cases, like Ellwood's, where a paramilitary employer compels its employee to perform certain acts in Illinois. The court set out the requisite showing in its statement of the principle. Illinois courts lack jurisdiction over an employee or agent who comes under the protection of Illinois law to serve the interests of his employer or principal, and not to serve his personal interests.

Some courts have held that the shield does not apply when the individual had discretion over the actions at issue. *Zurich Capital Markets, Inc. v. Coglianese*, 388 F. Supp. 2d 847, 860 (N.D. Ill. 2004). One federal court observed that *Rollins* left open the question of whether an employee's discretionary acts can give Illinois courts jurisdiction over the employee. *Brujis v. Shaw*, 876 F. Supp. 975, 978

(N.D. Ill. 1995). Brujis sued Shaw, an officer of a California corporation, for deceptive practices related to debt collection. Shaw's only contacts with Illinois resulted solely from his work on behalf of the corporation. Brujis argued that Illinois had jurisdiction because Shaw had discretion to decide whether to engage in the deceptive practices in Illinois alleged in her complaint. The court believed Illinois courts would consider the exercise of discretion as a factor affecting the fairness of exercising jurisdiction over a defendant. *Brujis*, 876 F. Supp. at 979. The court held that because Shaw owned a majority of the shares of the corporation he represented, he stood to gain personally from the alleged deceptive acts on behalf of the corporation. *Brujis*, 876 F. Supp. at 980. And, as a senior officer, he had responsibility for deciding whether to solicit business in Illinois. *Brujis*, 876 F. Supp. at 980. Because Shaw "made a conscious decision to conduct business in Illinois through allegedly deceptive practices, [he] must answer in Illinois for the consequences of that decision." *Brujis*, 876 F. Supp. at 980.

We agree with the court in *Brujis* that our supreme court, in *Rollins*, allowed for various factors to affect the determination of whether Illinois due process permits Illinois courts to exercise jurisdiction over a defendant. The court in *Rollins* directs us to consider "the quality and nature of the defendant's acts" (*Rollins*, 141 Ill. 2d at 275) to decide whether the exercise of jurisdiction over that defendant would be "fair, just, and reasonable" (*Rollins*, 141 Ill. 2d at 275). The factors cited in *Brujis*, 876 F. Supp. at 980, "personal gain, discretionary actions, and ownership of most of a corporation's stock," all bear on the issue of whether a defendant's "conduct in Illinois was a product of, and was motivated by, his employment situation and not his personal interests" *Rollins*, 141 Ill. 2d at 280. The court in *Rollins* expressly held that a defendant's personal interest in his actions that lead to liability may make the fiduciary shield doctrine inapplicable. *Rollins*, 141 Ill. 2d at 280.

Here, Femal alleged in his complaint that O'Shaughnessy acted in Rockwell's interest when he defamed Femal. But in his affidavit Femal alleged facts that might support a finding that O'Shaughnessy had some personal stake in preventing Femal from profiting from the patent. Like the court in *Rice v. Nova Biomedical Corp.*, 38 F.3d 909, 912 (7th Cir. 1994), we "can think of no reason why the exception for personal interests should be limited to pecuniary ones." O'Shaughnessy, in his own affidavit, sufficiently denied having any personal interest in the result of his consultation with Golden in Illinois.

"If the plaintiff's documentary evidence, including affidavits and

depositions, contradicts the defendant's evidence on issues of fact that will determine whether the court has personal jurisdiction, the trial court must hear the testimony, evaluate its credibility, and resolve any material conflicts in the evidence." *Stein*, 296 Ill. App. 3d at 523; see also *TCA International, Inc. v. B&B Custom Auto, Inc.*, 299 Ill. App. 3d 522, 531-32 (1998). We find the conflicting affidavits create an issue of fact concerning the extent of O'Shaughnessy's personal interest in the consequences of his alleged defamation of Femal in the course of his conversation with Golden. If O'Shaughnessy actively sought to reduce Femal's income, out of animosity or embarrassment over his own mistakes, that personal interest, and his discretionary act of coming to Illinois to defame Femal in pursuit of that personal interest, may permit Illinois courts to exercise jurisdiction over O'Shaughnessy. On the other hand, if O'Shaughnessy acted solely to advance Rockwell's interests, *Rollins* instructs us that our courts lack jurisdiction over O'Shaughnessy.

Accordingly, we reverse and remand this case to the trial court with directions to reconsider its decision in light of this opinion and to hold an evidentiary hearing and, after holding the hearing, make written findings of fact, conclusions of law and render another decision.

Reversed and remanded with directions.

O'BRIEN, P.J., and NEVILLE, J., concur.