120 F.Supp.2d 58 (2000)
In re VITAMINS ANTITRUST LITIGATION,
This Document Relates To:
Cargill, Inc., et al.
v.
F. Hoffman-LaRoche Ltd., et al.
NBTY, et al.
v.
F. Hoffman-LaRoche, Ltd., et al.
Perrigo Co., et al.
v.
F. Hoffman-LaRoche Ltd., et al.
Natural Alternatives Internatl. Inc., et al.
v.
F. Hoffman-LaRoche Ltd., et al.
Leiner Health Products, Inc.
v.
F. Hoffman-LaRoche Ltd., et al.
Misc. No. 99-197 (TFH). MDL No. 1285.
United States District Court, District of Columbia.
October 6, 2000.
*59 *60 *61 *62 Ann Catherine Yahner, Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Jonathan David Schiller, Boies & Schiller, L.L.P., Washington, DC, Steven A. Martino, Stephen L. Klimjack, Jackson, Taylor, Martino & Hedge, Mobile, AL, Kenneth L. Adams, Dickstein Shapiro Morin & Oshinsky, LLP, Washington, DC, John W. Sharbrough, III, Mobile, AL, M. Stephen Dampier, P. Dean Waite, Jr., Mary Elizabeth Snow, The Sharbrough Law Firm, PC, Mobile, AL, Roberta D. Liebenberg, Fine, Kaplan & Black, Philadelphia, PA, Bruce H. Simon, Cohen, Weiss & Simon, New York City, M. Eric Frankovitch, Frankovitch, Anetakis, Colantonio & Simon, Steven M. Recht, Recht Law Offices, Weirton, WV, Craig C. Corbitt, Zelle, Hoffmann, Voelbel & Gette, L.L.P., Steven O. Sidener, Gold Bennett & Cera LLP, San Francisco, CA, Richard Alan Arnold, Kenny, Nachwalter, Seymour, Arnold, Critchlow, Spector, PA, Miami, FL, Joseph Michael Vanek, Daar, Fisher, Kanaris & Vanek, P.C., Chicago, IL, Gerald G. Saltarelli, Butler Rubin Saltarelli & Boyd, Chicago, IL, C. Brooks Wood, Morrison & Heckler, LLP, Kansas City, MO, Robert II Heuck, Waite, Schneider, Bayless & Chesley, Cincinnati, OH, Dallas D. Ball, Ballentine, SC, Jeannine M. Tsukahara, Zelle, Hoffmann, Voelbel & Gette, L.L.P., San Francisco, CA, Carol Elder Bruce, Tighe, Patton, Armstrong & Teasdale, Washington, DC, Colin A. Underwood, Solomon, Zauderer, Ellenhorn, Frischer & Sharp, New York City, Phillip A. Cole, Lommen, Nelson, Cole & Stageberg, P.A., Minneapolis, MN, K. Craig Wildfang, Robins, Kaplan, Miller & Ciresi, Poley F. Brook, Winthrop & Weinstein, PA, Minneapolis, MN, Kevin A. Bowman, Sebaly, Shillito & Dyer, Dayton, OH, Gordon Ball, Knoxville, TN, Elaine Metlin, Dickstein Shapiro Morin & Oshinsky, LLP, Bradley Stuart Lui, Morrison & Foerster, LLP, Washington, DC, Bruce L. Montgomery, Arnold & Porter, George T. Manning, Jones, Day, Reavis & Pogue, Washington, DC, Tyrone C. Fahner, Mayer, Brown & Platt, Chicago, IL, for Plaintiffs.
Scott William Muller, Davis, Polk & Wardwell, Washington, DC, Lawrence Byrne, Squadron, Ellenoff, Plesent & Sheinfeld, LLP, New York City, Karen Natalie Walker, Jeffrey Bossert Clark, Kirkland & Ellis, Washington, DC, Theodore V. Cacioppi, Craig M. Walker, Rogers & Wells, New York City, Jonathan Lee Greenblatt, Shearman & Sterling, James R. Weiss, Preston, Gates, Ellis & Rouvelas Meeds, Washington, DC, Kurt S. Odenwald, Jim J. Shoemake, Kevin K. Spradling, *63 Guilfoil Petzall & Shoemake, LLP, St. Louis, MO, Paul H. Friedman, Terri L. Bowman, Dechert Price & Rhoads, Donald I. Baker, Baker & Miller, PLLC, Washington, DC, John M. Majoras, Jones, Day, Reavis & Pogue, Cleveland, OH, Aileen Meyer, Winthrop, Stimson, Putnam & Roberts, Washington, DC, Laurence Truman Sorkin, Cahill, Gordon, Reindel, New York City, S. Benjamin Bryant, Allen Guthrie & McHugh, Charleston, WV, Michael E. Nogay, Sellitti Nogay & McCune, Weirton, WV, Erin R. Brewster, MacCorkle Lavender & Casey, PLLC, Charleston, WV, Michael Louis Denger, Gibson, Dunn, Crutcher, L.L.P., Washington, DC, Mark Riera, Sheppard, Mullin, Richter & Hampton, LLP, Los Angeles, CA, Peter Dean Isakoff, Weil, Gotshal & Manges, L.L.P., Washington, DC, William L. Monts, III, Wilson, Hajek & Shapiro, P.C., Virginia Beach, VA, Stephen Fishbein, Shearman & Sterling, New York City, John Worth Kern, IV, Janis, Schuelke & Wechsler, Washington, DC, Amy, L. Bess, Sonnenschein, Nath & Rosenthal, Washington, DC, George J. Terwilliger, McGuire, Woods, Battle & Boothe, LLP, Washington, DC, Kevin Richard Sullivan, King & Spalding, Washington, DC, Bret Alan Campbell, Joanne Celia Lewers, Clifford, Chance, Rogers & Wells, LLP, Jacqueline Ray Denning, Arnold & Porter, Washington, DC, Mary-Helen Perry, Jones, Day, Reavis & Pogue, Washington, DC, William W. Kocher, Columbus, OH, Eric B. Fastiff, Leiff, Cabraser, Heimann & Bernstein, LLP, San Francisco, CA, Guido Saveri, Saveri & Saveri, PC, San Francisco, CA, Jeffrey Andrew Bartos, Querrieri, Edmond & Clayman, Washington, DC, Ann Catherine Yahner, Cohen, Milstein, Hausfeld & Toll, P.L.L.C., Washington, DC, Stephen John Pollak, Shea & Gardner, Washington, DC, Bruce L. Montgomery, Arnold & Porter, Washington, DC, George T. Manning, Jones, Day, Reavis & Pogue, Washington, DC, Tyrone C. Fahner, Andrew S. Marovitz, Mayer, Brown & Platt, Chicago, IL, Thomas M. Mueller, Mayer Brown & Platt, New York City, Donald I. Baker, Baker & Miller, PLLC, Washington, DC, D. Stuart Meiklejohn, New York City, Stacey R. Friedman, Sullivan & Cromwell, New York City, Amy L. Bess, Sonnenschein, Nath & Rosenthal, Washington, DC, Lawrence Byrne, Squadron, Ellenoff, Plesent & Sheinfeld, LLP, New York City, Cathy M. Armstrong, Thorp Reed & Armstrong, LLP, Wheeling, WV, Mark Riera, Sheppard, Mullin, Richter & Hampton, LLP, Los Angeles, CA, Theodore V. Cacioppi, Craig M. Walker, Rogers & Wells, New York City, Bret Alan Campbell, Joanne Celia Lewers, Clifford, Chance, Rogers & Wells, LLP, Donald C. Klawiter, Morgan, Lewis & Bockius, L.L.P., Washington, DC, Jonathan R. Tuttle, DeBevoise & Plimpton, Washington, DC, Charles E. Jarrett, Marcia E. Marstellar, Baker & Hostetler, Cleveland, OH, Donald I. Baker, Baker & Miller, PLLC, Washington, DC, Elizabeth Wallace Fleming, Senniger, Powers, Leavitt & Roedel, St. Louis, MO, Donald C. Klawiter, Morgan, Lewis & Bockius, L.L.P., Washington, DC, Holly A. House, McCutchen Doyle Brown & Eneneer, San Francisco, CA, Sutton Keany, Winthrop, Stimson, Putnam & Roberts, New York City, E. Perry Johnson, Bryan Cave, LLP, Jeffrey S. Russell, St. Louis, MO, Robert Kenly Webster, Steven R. Kuney, Williams & Connolly, Edward Bennett Williams, Thomas W. Mitchell, Garrett Berry Magens Duarte, Collier, Shannon, Rill & Scott, P.L.L.C., Michael G. Lenett, The Cuneo Law Group, P.C., Washington, DC, for Defendants.

MEMORANDUM OPINION Re: Bronnimann Motions
THOMAS F. HOGAN, District Judge.
Pending before the Court are defendant Roland Bronnimann's ("Bronnimann") Motion to Dismiss the Cargill complaint for lack of personal jurisdiction and the Cargill plaintiffs' Motion to Compel Roland *64 Bronnimann's testimony.[1] Upon careful consideration of the parties' briefs, the oral arguments presented at the September 13, 2000 hearing, and the entire record herein, this Court will deny the Motion to Compel and defer ruling on the Motion to Dismiss pending further jurisdictional discovery.

I. BACKGROUND
Roland Bronnimann ("Bronnimann") was head of the Vitamins and Fine Chemicals Division of defendant F. Hoffman LaRoche Ltd. ("Roche Ltd.") from January 1990 until May 1999 when he purportedly left the company in connection with Roche Ltd.'s guilty plea. In addition, from January 1990 to May 1999, Bronnimann was a member of Roche Ltd.'s Executive Committee which oversees Roche Ltd.'s worldwide operations. On October 29, 1999 Bronnimann pled guilty to criminal violations of the Sherman Act for his role in the global conspiracy among Roche Ltd. and the other principal producers of vitamins to allocate sales volumes, products, territories and customers and to rig bids and fix prices of vitamins sold in the United States and elsewhere. As part of his guilty plea, Bronnimann agreed to pay a $150,000 fine and serve a five-month prison term in the United States.
Plaintiffs sued Bronnimann in the Northern District of Illinois alleging that jurisdiction in Illinois was proper under Section 12 of the Clayton Act and the Illinois long-arm statute. On January 12, 2000, Bronnimann moved to dismiss the complaint for lack of personal jurisdiction. In conjunction with this Motion, Bronnimann filed an affidavit denying that he has had any contacts with Illinois or the District of Columbia relevant to this lawsuit.
Pursuant to the Stipulated Order which this Court endorsed on April 14, 2000, plaintiffs took Bronnimann's deposition on April 19, 2000 at the Allenwood Federal Prison Camp in Montgomery, Pennsylvania, two days before his release from federal custody. Bronnimann asserted the Fifth Amendment in response to all substantive questions.

II. DISCUSSION

A. Motion to Compel
Bronnimann's affidavit states, in pertinent part:
During the relevant time period, I have had no commercial contacts with Illinois or the District of Columbia relevant to this lawsuit. I have had no contacts with Illinois or the District of Columbia for my own personal benefit. I do not have an Illinois or District of Columbia address, office, telephone listing or bank account. I have conducted no personal business in Illinois or the District of Columbia myself or through an agent, nor have I ever brought a lawsuit or administrative proceeding in Illinois or the District of Columbia.
See Def.'s Exh. A at ¶ 4. The Cargill plaintiffs argue that this "deliberate and voluntary decision to submit sworn testimony with his selective version of his contacts with Illinois and the United States" constitutes a waiver of Bronnimann's Fifth Amendment privilege and thus the Court should find that Bronnimann waived his Fifth Amendment rights at least as to all details regarding the statements in his affidavit and compel Bronnimann to appear for another deposition to answer questions regarding such statements. See Pl's Surreply/Motion to Compel at 9. Additionally, the Cargill plaintiffs argue that the Court can draw adverse inferences from Bronnimann's Fifth Amendment invocations against both Bronnimann personally and his employer Roche Ltd. in connection with their motions to dismiss for lack of personal jurisdiction.[2]Id.
*65 On the other hand, Bronnimann argues that the Court cannot find a waiver of the Fifth Amendment in this case because his affidavit poses no danger that the trier of fact will rely on a distorted view of the truth since the Court can easily disregard the affidavit and decide Bronnimann's Motion to Dismiss without it. Bronnimann also argues that his affidavit cannot constitute a waiver because the statements contained therein are not incriminating and a witness does not lose his Fifth Amendment privilege unless he testifies to an incriminating fact. Finally, Bronnimann argues that plaintiffs' discussion of the Court's ability to draw adverse inferences from his invocation of the Fifth Amendment privilege is premature since the Court has not ruled on his Motion to Dismiss and thus it has not yet determined whether jurisdictional discovery is appropriate with respect to that Motion.
The first question when a witness invokes the Fifth Amendment privilege against self-incrimination is whether that privilege is applicable to the case at hand. As a general rule, where there can be no further incrimination, there is no basis for the assertion of the privilege. Mitchell v. United States, 526 U.S. 314, 326, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999). "If no adverse consequences can be visited upon the convicted person by reason of further testimony, then there is no further incrimination to be feared." Id. Moreover, the feared adverse consequences must be criminal; the Fifth Amendment right serves to protect individuals from criminal, not civil liability. Federal Savings & Loan Insurance Corp. v. Dixon, 835 F.2d 554, 566 (5th Cir.1987). Finally, fear of foreign criminal prosecution is insufficient. United States v. Balsys, 524 U.S. 666, 669, 118 S.Ct. 2218, 141 L.Ed.2d 575 (1998) (holding that concern with foreign prosecution is beyond the scope of the Self-Incrimination Clause). Therefore, the Fifth Amendment privilege applies in Bronnimann's case only if there is a legitimate fear of state criminal prosecution. See id. at 680, 118 S.Ct. 2218 ("the constitutional privilege against self-incrimination protects ... a federal witness against incrimination under state as well as federal law"). Since Bronnimann's statements, if he were compelled to answer plaintiffs' questions, could subject him to state criminal prosecution and since there is no language in Bronnimann's plea agreement that would preclude the initiation of state criminal charges against him, the Fifth Amendment privilege against self-incrimination would apply to this case.
However, finding that Bronnimann has a Fifth Amendment privilege does not end the matter. The next question is whether, given Bronnimann's guilty plea in the criminal action and his submission of a sworn affidavit denying jurisdictional contacts with Illinois and the District of Columbia in this civil action, his Fifth Amendment privilege can be deemed waived in this case.

1. The Guilty Plea
This Court finds that Bronnimann's guilty plea is not sufficient to warrant a waiver of his Fifth Amendment privilege. In Mitchell v. United States, the Supreme Court found that "a guilty plea is more like an offer to stipulate than a decision to take the stand" and that the "purpose of Rule 11 is to inform the defendant of what she loses by forgoing the trial, not to elicit a waiver of the privilege for proceedings still to follow." Mitchell, 526 U.S. at 323, 119 S.Ct. 1307. Although Mitchell concerned the issue of whether a defendant's guilty plea functioned as a waiver of the defendant's right to remain silent at sentencing and thus did not directly address the relationship between a guilty plea and subsequent civil proceedings that occur after sentencing and subsequent to release from prison, the Court did explicitly hold that a "waiver of a right to trial with its attendant privileges is not a waiver of the privileges *66 which exist beyond the confines of the trial." Id. at 324, 119 S.Ct. 1307.
Moreover, most courts that have considered this issue have held that the waiver of the privilege against self-incrimination in one proceeding does not affect the right of a witness or accused to invoke the privilege as to the same subject matter in another independent proceeding, but is limited to the proceeding in which it occurs. See, e.g., United States v. James, 609 F.2d 36, 43 (2d Cir.1979), cert. denied, 445 U.S. 905, 100 S.Ct. 1082, 63 L.Ed.2d 321 (1980); see also 42 A.L.R.Fed. 793 at § 3 (1979) (citing cases with similar holdings in the First, Second, Third, Fourth, and Ninth Circuits). There are two basic reasons for this rule: (1) during the period between successive proceedings conditions may change, thereby creating new grounds for apprehension; or (2) the witness may be subject to different interrogation for different purposes at subsequent proceedings. Id. Therefore, a guilty plea constitutes a waiver of any Fifth Amendment privilege against self-incrimination as it applies to the particular crime to which the plea was entered, but it does not constitute a blanket waiver of the privilege and the witness retains the right to assert the privilege as to any other crime for which he can still be prosecuted. See United States v. Arnott, 704 F.2d 322, 325 (6th Cir.), cert. denied, 464 U.S. 948, 104 S.Ct. 364, 78 L.Ed.2d 325 (1983); United States v. Lyons, 703 F.2d 815, 818 (5th Cir.1983); United States v. Yurasovich, 580 F.2d 1212, 1217-18 (3d Cir.1978).
In this case, although Bronnimann has already been sentenced and has finished his term of imprisonment for the federal criminal offense to which he pled guilty, he is still exposed to state criminal liability. Therefore, Bronnimann's guilty plea in the criminal proceeding does not constitute a waiver of his privilege against self-incrimination in this civil action.[3]

2. The Affidavit
The next issue is whether Bronnimann's submission of a sworn personal affidavit along with his Motion to Dismiss for lack of personal jurisdiction can be considered a waiver of his Fifth Amendment privilege. There is no doubt that a waiver of the Fifth Amendment's privilege against self-incrimination may, in an appropriate case, be inferred from a witness's prior statements with respect to the subject matter of the case, without an inquiry into whether the witness, when the made the statements, actually knew of the existence of the privilege and consciously chose to waive it. Klein v. Harris, 667 F.2d 274, 287 (2d Cir.1981). However, as a matter of policy, federal courts have universally held that a "testimonial waiver is not to be lightly inferred and the courts accordingly indulge every reasonable presumption against finding a testimonial waiver." Id., citing Smith v. United States, 337 U.S. 137, 150, 69 S.Ct. 1000, 93 L.Ed. 1264 (1949). Traditionally, courts have only inferred a waiver of the Fifth Amendment's privilege against self-incrimination from a witness's prior statements if: "(1) the witness' prior statements have created a significant likelihood that the finder of fact will be left with and prone to rely on a distorted view of the truth, and (2) the witness had reason to know that his prior statements would be interpreted as a waiver of the Fifth Amendment's privilege against self-incrimination." Id.

a. Danger of Distortion
The duty of a trial court when confronted with an invocation of a party's Fifth Amendment privilege in a civil case *67 is to "strive to accommodate a party's Fifth Amendment interests" while at the same time being careful to "ensure that the opposing party is not unduly disadvantaged." Serafino v. Hasbro, Inc., 82 F.3d 515, 518 (1st Cir.1996). The burden on the party asserting the privilege "should be no more than is necessary to prevent unfair and unnecessary prejudice to the other side." Id. In order to find a waiver, the prior testimony at issue must be prejudicial to the other party such that it will leave the finder of fact with misleading or one-sided information on which it will likely rely in reaching a determination. Klein at 288 ("waiver of the fifth amendment's privilege against self-incrimination should be inferred only in the most compelling of circumstances. Such circumstances do not exist unless a failure to find a waiver would prejudice a party to the litigation").
Defendant argues that there is no danger of distortion here because the Court may disregard the affidavit and decide the Motion to Dismiss without it. See Gentile v. State Bar of Nevada, 501 U.S. 1030, 1076, 111 S.Ct. 2720, 115 L.Ed.2d 888 (1991) ("[t]rial judges often have access to inadmissible and highly prejudicial information and are presumed to be able to discount or disregard it"). In fact, this does appear to be the typical remedy where a party has submitted an affidavit and thereafter asserts his Fifth Amendment privilege. See e.g., In re Parcels of Land, 903 F.2d 36, 42 (1st Cir.1990) (affirming district court which struck forfeiture claimant's affidavit submitted in opposition to government's motion for summary judgment where claimant thereafter asserted his Fifth Amendment privilege when the government took his deposition); In re Edmond, 934 F.2d 1304, 1308 (4th Cir.1991) (affirming district court which struck affidavit submitted by Edmond in bankruptcy proceeding in support of his motion for summary judgment after having asserted the Fifth Amendment throughout discovery)[4]. Since a waiver of the Fifth Amendment should not be lightly inferred and every presumption should be in favor of protecting that privilege, this Court finds that the proper remedy for the potential distortion in this case is to strike Bronnimann's affidavit and resolve his Motion to Dismiss without it.

b. Knowing Waiver
The second prong of the Klein testthat the defendant was on notice that his statements would amount to a waiver of the privilegehas two parts. The statements must be both (1) "testimonial," meaning voluntarily made under oath in the same judicial proceedings and (2) "incriminating," meaning that they do not merely deal with matters collateral to the events surrounding commission of the crime but instead they directly inculpate the witness on the charges at issue. Klein, 667 F.2d at 288. Defendant does not dispute that his affidavit was testimonial, and it is well-established that sworn affidavits are indeed considered testimonial for purposes of the Fifth Amendment privilege against self-incrimination. See, e.g., In re Parcels of Land, 903 F.2d at 43-44. Instead, Bronnimann relies solely on the argument that the submission of his affidavit along with his Motion to Dismiss was not a knowing waiver of his Fifth Amendment privilege because the statements in his affidavit were not incriminating.
It is clear that a witness does not lose his Fifth Amendment privilege unless he testifies to an incriminating fact. See, e.g., Rogers v. United States, 340 U.S. 367, 372-73, 71 S.Ct. 438, 95 L.Ed. 344 (1951). Plaintiffs argue that Bronnimann's statements in his affidavit are incriminating because his attempts to avoid personal jurisdiction put in issue the acts in furtherance of the conspiracy that Bronnimann *68 and others under his control at Roche Ltd. allegedly committed in Illinois and elsewhere. Defendant argues that the statements in his affidavit are not incriminating because they do not admit to guilt in any way and merely deny any contacts with the District of Columbia or Illinois that would subject him to this Court's jurisdiction.
The Court agrees with Bronnimann that the statements in his affidavit that he lacks contacts with Illinois or the District of Columbia are not incriminating, because they do not in any way link him to the price-fixing activities alleged in plaintiffs' complaint. See DeMartin v. Manson, 480 A.2d 578, 584 (1984) (no waiver of Fifth Amendment privilege because the court found that there was "nothing self-incriminating to [the witness] in that testimony as to his involvement in the crimes charged"). Therefore, this Court cannot find a waiver in this case. Accordingly, plaintiffs' Motion to Compel Bronnimann's Testimony must be denied.

c. Adverse Inference in Civil Cases
The Supreme Court has held that "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." Baxter v. Palmigiano, 425 U.S. 308, 318, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976). Therefore, after striking Bronnimann's affidavit, the Court may draw an adverse inference from his refusal to answer plaintiffs' questions about his jurisdictional contacts when resolving his Motion to Dismiss. See, e.g., Securities and Exchange Comm'n v. International Loan Network, Inc., 770 F.Supp. 678, 695 (D.D.C.1991) ("the fifth amendment does not prohibit drawing adverse inferences against parties to civil proceedings when they refuse to testify in response to probative evidence offered against them."); see also Davis v. Northside Realty Associates, Inc., 95 F.R.D. 39, 45 (N.D.Ga.1982) ("Unfortunately for all the civil defendants, failure to respond, albeit for good cause, creates an adverse inference against those to whom the questions were submitted.... When the negative inferences are coupled with the assumption that the substantive allegations of the pleadings are true, a scenario is produced that is highly suggestive of a conspiracy").

B. Motion to Dismiss
On January 14, 2000, defendant Roland Bronnimann moved to dismiss the Cargill first amended complaint[5] for lack of personal jurisdiction pursuant to Fed.R.Civ.P. 12(b)(2). Bronnimann contends that the case against him should be dismissed because the complaint is devoid of any specific allegations that jurisdictionally connect him to Illinois or otherwise establish jurisdiction over him. Plaintiffs advance two theories of jurisdiction with respect to Bronnimann. First, they argue that this Court has personal jurisdiction over him pursuant to the Illinois long-arm statute, 735 ILCS 5/2-209, due to the fact that he pled guilty and served a five-month sentence in this country for his participation in the vitamins antitrust conspiracy. Second, they contend that even if the Illinois long-arm statute was inapplicable, Bronnimann would be subject to this Court's jurisdiction pursuant to Fed.R.Civ.P. 4(k)(2), which provides for jurisdiction over foreign defendants in federal question cases who are not otherwise subject to personal jurisdiction in any state, provided that they have sufficient contacts with the United States as a whole.

1. Illinois Long-Arm Statute
Plaintiffs argue that this Court has personal jurisdiction over Bronnimann under the Illinois long-arm statute due to (1) his plea agreement with the government in *69 which he admits to his involvement in the criminal conspiracy, (2) Rule 4(k)(1) and the conspiracy theory of jurisdiction, and (3) his inability to invoke the fiduciary shield doctrine.

a. The Plea Agreement
First, plaintiffs argue that Bronnimann's plea agreement establishes both that he participated in a conspiracy that necessarily targeted Illinois and that substantial acts in furtherance of the conspiracy occurred in Illinois. However, the plain language of Bronnimann's plea agreement merely establishes that he participated "in a conspiracy with other vitamin manufacturers, and their officers and employees, the primary purpose of which was to fix, increase, and maintain the price and allocate the volume of, certain vitamins sold in the United States and elsewhere and to allocate customers in the United States." See Pl's Ex. 1 ¶¶ 3, 4. The plea agreement goes on to state that the defendant engaged in conversations and attended meetings with other vitamin manufacturers and was also aware of and authorized the participation of his subordinates in meetings and conversations with other vitamin manufacturers where agreements were reached to fix the price of certain vitamins in the United States and elsewhere. Id.
Nowhere in Bronnimann's plea agreement is there any mention of Illinois. Therefore, this agreement, standing alone, is not sufficient to establish Bronnimann's contacts with Illinois; instead, the plea agreement merely establishes Bronnimann's contacts with the United States as a whole. As discussed in the Court's May 9, 2000 Memorandum Opinion on the various motions to dismiss, this Court is bound by circuit law to follow a local, not a national, contacts test for personal jurisdiction. See GTE New Media Services v. BellSouth Corp., 199 F.3d 1343 (D.C.Cir. 2000). Accordingly, Bronnimann's plea agreement is not sufficient to establish personal jurisdiction over this defendant in the transferor forum.

b. Rule 4(k)(1) and Conspiracy Jurisdiction
Second, plaintiffs argue that under Fed.R.Civ.P. 4(k)(1), this Court can exercise personal jurisdiction over Bronnimann if it determines that service of process was proper under the Illinois long-arm statute based upon Bronnimann's admitted participation in a conspiracy that necessarily targeted purchasers located in Illinois and where substantial acts in furtherance of the conspiracy occurred in Illinois.
It is now well-established that the Illinois long-arm statute encompasses the conspiracy theory of jurisdiction. See Cameron v. Owens-Corning Fiberglas Corp., 296 Ill.App.3d 978, 986, 231 Ill.Dec. 55, 695 N.E.2d 572, 577 (Ill.App.), appeal denied, 179 Ill.2d 578, 235 Ill.Dec. 561, 705 N.E.2d 434 (1998), cert. denied, 525 U.S. 1105, 119 S.Ct. 872, 142 L.Ed.2d 773 (1999) (upholding jurisdiction over British corporation based on allegations that it conspired with other companies which performed acts in Illinois); see also Textor v. Board of Regents, 711 F.2d 1387, 1392 (7th Cir.1983) (recognizing the conspiracy theory of jurisdiction under Illinois law and upholding personal jurisdiction against out-of-state defendants). Personal jurisdiction, including minimum contacts, is established over an out-of-state defendant by alleging an actionable conspiracy and a substantial act in furtherance of the conspiracy performed in Illinois. Textor, 711 F.2d at 1392-93. While it is clear that there is an actionable conspiracy in this case and that Bronnimann was part of this conspiracy, plaintiffs must also allege that a substantial act in furtherance of this conspiracy occurred in Illinois. See e.g., id. (alleging that out-of-state defendants had held meetings and discussions in Illinois).
Plaintiffs refer to the following passages in their second amended complaint as evidence that Bronnimann is subject *70 to suit in Illinois: (1) defendants participated in a worldwide per se unlawful conspiracy to allocate territories, customers, sales volumes and market shares and to rig bids and fix and raise the prices of vitamins, Complaint at ¶¶ 52-54, 56-61; (2) defendants "performed unlawful acts in furtherance of their unlawful combination and conspiracy within the Northern District of Illinois and elsewhere," Complaint at ¶ 2; (3) defendant Daiichi Fine Chemicals, Inc., one of Bronnimann's co-conspirators, has its principal place of business in Lincolnshire, Illinois, from which it directed its involvement in the conspiracy, Complaint at ¶ 26; (4) defendant DuCoa L.P., another of Bronnimann's co-conspirators, is an Illinois limited partnership with its principal place of business in Highland, Illinois and DuCoa L.P. orchestrated its participation in the conspiracy from its headquarters in Illinois, Complaint ¶ 29; and (5) three of DuCoa L.P.'s top executives Lindell Hilling, Pete Fischer, and Antonio Felixwere also based in Illinois and agreed to plead guilty based on their extensive participation in the conspiracy, Complaint ¶¶ 29, 37-39. In order to establish conspiracy jurisdiction in Illinois, plaintiffs must allege a specific "substantial act" in furtherance of the conspiracy that occurred in the forum at issue, for instance material phone calls, meetings, etc. See, e.g., Textor, 711 F.2d at 1392; see also United Phosphorus, Ltd. v. Angus Chemical Co., 43 F.Supp.2d 904, 912 (N.D.Ill.1999). Since plaintiffs have not yet alleged a specific "substantial act" in furtherance of the conspiracy that occurred in Illinois, this Court cannot find that plaintiffs have satisfied their burden of establishing jurisdiction under the Illinois long-arm statute.

c. Fiduciary Shield Doctrine
Bronnimann claims that he is not subject to personal jurisdiction in Illinois because he falls under the "fiduciary shield" doctrine that protects employees operating wholly in the interests of their companies. Plaintiffs argue that this doctrine is inapplicable in this case, because Bronnimann was a high-level employee at Roche Ltd.'s Vitamins and Chemicals Division and a member of Roche Ltd.'s Executive Committee and thus had discretion to make business decisions of his own; he was not a low-level employee who was bound to follow the orders of supervisors like most employees found to be protected by the fiduciary shield doctrine.
The fiduciary shield doctrine is an equitable principle that is to be applied with discretion. Rice v. Nova Biomedical Corp. 38 F.3d 909, 914 (7th Cir.1994). It is well-established that this doctrine is recognized by the courts of Illinois. Id. at 912; see also State Security Insurance Co. v. Frank B. Hall & Co., 530 F.Supp. 94, 97-98 (N.D.Ill.1981). However, there are three basic limitations to the fiduciary shield doctrine: (1) where the defendant was motivated in part or solely by personal interests, as opposed to the interests of the corporation[6], (2) where the defendant is *71 the alter-ego of the entity for which he is a fiduciary, and (3) possibly, where the defendant was a director or officer who had discretion regarding whether the contacts occurred. Robinson v. Sabis Educational Systems, Inc., No. 98 C 4251, 1999 WL 412642, at * 3 (N.D.Ill. May 28, 1999).
It is not conclusively determined whether a fiduciary's exercise of discretion automatically removes him from the protection of the fiduciary shield doctrine. See Perry v. Delaney, 5 F.Supp.2d 617, 620 (C.D.Ill. 1998). However, the majority of cases that have addressed the issue have "generally concluded that the shield should not apply where the employee has the power to decide what is to be done and chooses to commit the acts that subject him to long-arm jurisdiction." Brujis v. Shaw, 876 F.Supp. 975, 978 (N.D.Ill.1995). "Indeed, in only one case in which the discretion issue arose did a court reject the idea of an exception to the fiduciary shield for discretionary acts, and it did so only in passing." Id., citing Rice, 38 F.3d 909.[7] Following the reasoning of Brujis, this Court finds that an Illinois court would consider the extent of the nonresident defendant's discretion as "an important factor, though not a determinative one, in deciding whether an Illinois court's jurisdiction" over a non-resident defendant was proper. Id. at 979.
The key to resolution of the fiduciary shield issue is fairness. This court must look at the quality and nature of Bronnimann and his co-conspirators' acts in Illinois to determine whether it would be reasonable to haul Bronnimann into court based on those acts. "The test is whether, on the basis of the defendant's conduct in Illinois or acts affecting Illinois interests, it would be fair to require him to defend an action in Illinois." Perry, 5 F.Supp.2d at 621. Clearly, Bronnimann was a senior corporate officer who was in a position to decide whether or not to participate in the vitamins antitrust conspiracy.[8] Moreover, any claim by Bronnimann that he was compelled by Roche Ltd. to undertake his conspiratorial actions and that he had no discretion would be inherently at odds with the admissions in his Plea Agreement. Therefore, the Court finds that Bronnimann cannot successfully invoke the fiduciary shield doctrine in this case.

2. Rule 4(k)(2)
Since this Court has found that plaintiffs have not yet established personal jurisdiction over Bronnimann under the Illinois long-arm statute, the Court must now consider whether Bronnimann is subject to this Court's jurisdiction pursuant to Fed.R.Civ.P. 4(k)(2). Rule 4(k)(2) provides:
If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or *72 filing a waiver of service is also effective with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.
Rule 4(k)(2) thus provides for service on foreign defendants for claims arising under federal law where the defendant has minimum contacts with the United States as a whole but does not have sufficient contacts with any single state to satisfy the long-arm statute of such a state. United States v. Swiss American Bank, Ltd., 191 F.3d 30, 41 (1st Cir.1999).
Here plaintiffs have failed to meet their prima facie burden concerning the applicability of Rule 4(k)(2), because they have failed to certify that Bronnimann is not subject to the jurisdiction of any state. In fact, at this point, plaintiffs are arguing that this defendant is subject to the jurisdiction of Illinois. As discussed in the Court's May 9, 2000 Memorandum Opinion, this Court reads Swiss Bank and the other applicable caselaw to hold that, in order to successfully invoke Rule 4(k)(2), plaintiffs must first certify that to their knowledge, the defendant is not subject to jurisdiction in any one state. The cases cited by plaintiffs are inapplicable because they were decided prior to Swiss Bank and do not discuss the procedural mechanisms for invoking the rule. See Chew v. Dietrich, 143 F.3d 24, (2d Cir.1998); Pyrenee v. Wocom Commodities, 984 F.Supp. 1148 (N.D.Ill.1997)[9] Therefore, although this may eventually be the theory under which the Court retains jurisdiction over Bronnimann, the Court cannot find that plaintiffs have successfully invoked Rule 4(k)(2) at this time.

3. Jurisdictional Discovery
Although under the current record plaintiffs have not yet alleged facts sufficient to establish personal jurisdiction over Bronnimann, the Court finds sufficient basis for permitting plaintiffs to obtain further jurisdictional discovery on the issue of Bronnimann's contacts with the transferor forum. See GTE New Media, 199 F.3d at 1351-52 ("if a party demonstrates that it can supplement its jurisdictional allegations through discovery, then jurisdictional discovery is justified.... We cannot tell whether jurisdictional discovery will assist GTE on this score, but it is entitled to pursue precisely focused discovery aimed at addressing matters relating to personal jurisdiction"). Therefore, the Court will defer ruling on Bronnimann's Motion to Dismiss pending further jurisdictional discovery by plaintiffs.

III. CONCLUSION
In conclusion, this Court will deny plaintiffs' Motion to Compel Bronnimann's testimony and will instead strike his affidavit when considering his Motion to Dismiss. The Court will also defer ruling on Bronnimann's Motion to Dismiss pending further jurisdictional discovery. An order will accompany this Opinion.
NOTES
[1] The "NBTY plaintiffs" have filed a Joinder to the Motion to Compel.
[2] At this time, the Court need only resolve the issue of whether it can draw an adverse inference against Bronnimann based upon his invocation of the Fifth Amendment. The issue of an adverse inference against Roche Ltd. can be determined at a later date.
[3] In the plea agreement, Bronnimann agrees to cooperate fully and even to be a witness in any litigation or other proceeding arising from or resulting from any such investigation "to which the United States is a party." See Bronnimann Plea Agreement at 8 (Exhibit 1 to Plaintiff's Opp. to Def's Motion to Dismiss). However, since the United States is not a party to the civil actions in this Court, Bronnimann presumably has no obligation to co-operate here.
[4] The Fourth Circuit analogized the striking of the affidavit in this context to the court's practice of striking direct testimony where a defendant has invoked the Fifth Amendment on cross examination. Id.
[5] After Bronnimann's motion was filed, the Court granted plaintiffs leave to file a second amended complaint. Therefore, the motion at issue now deals with the second amended complaint.
[6] Every employee who acts in his employer's interest could be said to derive a personal benefit from satisfying the employer, if only in terms of job security. This type of personal benefit alone should not deprive the employee of the fiduciary shield defense. Orix Credit Alliance, Inc. v. Taylor Machine Works, Inc., 1995 WL 109322 at * 1 (N.D.Ill. March 10, 1995). The requirement that the defendant invoking the fiduciary shield affirmatively show that he had no personal interest in the matter is strictly enforced. Even an affidavit by a defendant alleging that he "did not receive any personal remuneration or profit" from a particular conversation "is not an allegation that he derived no personal benefit from any other aspect of the transaction in which he may have been involved" and thus the court cannot "find as a fact that he did not act for his own personal benefit." Id. at *2-*3. "Personal interests" defeating a fiduciary shield claim include indirect benefits stemming from the wrongdoing. Id.; see also Loring v. American Savings of Florida, 1993 WL 512619, *4 (N.D.Ill. Dec. 7, 1993) (shield unavailable to directors accused of conspiring to break bank's charter because they allegedly benefitted by preventing others from receiving stock options). Since Bronnimann was President of the Roche Division that allegedly made considerable sums of money by selling vitamins at inflated prices, it cannot be said that the only personal benefit he derived from his actions relating to this conspiracy was the type of job security created by following the orders of a superior. In this case, Bronnimann was one of the superiors. Therefore, the Orix situation is inapplicable here and Bronnimann can be found to have personally benefitted from this conspiracy.
[7] The Rice court said only that "[i]f [the defendant's] action in coming into Illinois to fire and defame [the plaintiff] was done solely on behalf of [the defendant's employer], he is under the fiduciary shield and this regardless of whether he exercised discretion rather than merely carrying out precise orders mechanically." Rice, 38 F.3d at 912. The Brujis court remarked that this statement about discretion was "clearly dictum and we do not think that the court intended to settle the issue with a single sentence unsupported by any analysis." Brujis, 876 F.Supp. at 979. Therefore, the Brujis court concluded that Rice "does not undermine our conclusion that all the courts that have examined the discretion issue have held that the exercise of discretion removes the defendant from the fiduciary shield's protections." Id.
[8] As plaintiffs point out, it may also be contrary to fundamental equitable principles to allow Bronnimann, who has been convicted based on his own admission that he actively participated in the conspiracy, to invoke the shield.
[9] Pyrenee is also distinguishable because in that case the court noted that plaintiff did not contend that defendant's contacts with the forum satisfied the Illinois long-arm statute but instead that plaintiff there "relies exclusively on Rule 4(k)(2) to establish personal jurisdiction." Id. at 1160. Therefore, the plaintiff in Pyrenee did not face the problem confronting the Cargill plaintiffs here, i.e., that they are simultaneously arguing for personal jurisdiction in Illinois and claiming that defendant is not subject to jurisdiction in any state and thus the court has jurisdiction over him pursuant to Rule 4(k)(2).