Investors Corp. of Vermont v. Bayer AG, No. 1011-04 Cncv  (Norton, J., Aug. 3, 2005)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

STATE OF VERMONT
Chittenden County, ss.:


INVESTORS CORPORATION OF VERMONT

v.

BAYER AG; BAYER POLYMERS, LLC; BAYER
CORPORATION; UNIROYAL CHEMICAL COMPANY,
INC. (n/k/a CROMPTON MANUFACTURING COMPANY,
INC.); DOW CHEMICAL COMPANY; E.I. DUPONT
DE NEMOURS & COMPANY; DUPONT DOW
ELASTOMERS LLC; DSM N.V.; DSM ELASTOMERS B.V.;
DSM ELASTOMERS EUROPE B.V.; DSM ELASTOMERS
HOLDING COMPANY, INC.; DSM COPOLYMER, INC.;
DSM ELASTOMERS, INC.; DSM ELASTOMERS
AMERICA (f/k/a DSM COPOLYMER); and EXXON MOBIL
CHEMICAL CORPORATION

ENTRY

    This matter concerns allegations of unfair trade practices. The plaintiff, Investors Corporation of Vermont, has sued the defendants for allegedly restraining trade of Ethylene Propylene Diene Monomer (EPDM), a component of Ethylene-propylene elastomers, which are the third-most common forms of synthetic rubber in the world. Investors Corporation seeks to form a class of all Vermont persons or business entities that indirectly purchased EPDM from the defendants between January 1994 and December 2002. Investors Corporation claims violations of 9 V.S.A. §§ 2453, 2465

(Vermont antitrust law) and 9 V.S.A. §§ 2543, 2461 (Vermont consumer fraud law), as well as unjust enrichment.

Investors Corporation has filed a motion to compel the production of certain documents from Crompton Corporation and Uniroyal Chemical Company, Inc. ("Crompton"). Specifically, Investors Corporation seeks all documents related to (1) an alleged conspiracy between Crompton and other defendants to fix the price of EPDM; (2) Crompton's connections to its subsidiaries, affiliates, and joint venturers; (3) Crompton's relationship with distributors, independent sales representatives, and other entities which sell or market EPDM and EPDM-containing products in Vermont; and (4) Crompton's general presence or sales activities with regard to all products in Vermont. In order to prevent an undue burden or expense, Investors Corporation has agreed to accept copies of documents that Crompton submitted to the U.S. Department of Justice as a result of its investigation into the alleged conspiracy to fix prices. Investors Corporation argues that these documents are necessary in order for it to respond to Crompton's pending motion to dismiss for lack of personal jurisdiction.

"In deciding a pretrial motion to dismiss for lack of jurisdiction . . ., a court has considerable procedural leeway, and may determine the motion on the basis of affidavits alone; may permit discovery concerning the motion; or may conduct an evidentiary hearing on the merits of the motion." Roman Catholic Diocese v. Paton Insulators, 146 Vt. 294, 296 (1985). In order to determine whether further discovery is necessary in this matter, the court must explore some of Investors Corporation's theories by which this court may exercise personal jurisdiction over Crompton.

The court's personal jurisdiction over nonresident defendants, such as those here, extends "to the full extent permitted by the Due Process Clause." Dall v. Kaylor, 163 Vt. 274, 275 (1995). Accordingly, the court looks to federal constitutional standards in determining personal jurisdiction. N. Aircraft v. Reed, 154 Vt. 36, 41 (1990).

Due Process standards for personal jurisdiction require that nonresident defendants have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). These "minimum contacts" require that "'the defendant's conduct and connection with the forum State are such that [the defendant] should reasonably

anticipate being haled into court there.'" Dall, 163 Vt. at 276 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

Courts generally recognize that a defendant's conduct can satisfy minimum contacts in two ways. First, "[s]pecific jurisdiction exists when 'a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum.'" Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 567–68 (2d Cir. 1996) (quoting Helicopteros Nacionales de Columbia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984)). Second, "a court's general jurisdiction . . . is based on the defendant's general business contacts with the forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts." Id. at 568. General jurisdiction requires "'continuous and systematic general business contacts'" on the part of a defendant. Id. (quoting Helicopteros, 466 U.S. at 416).

Specific jurisdiction may exist in circumstances where a nonresident defendant maintains a relationship with a third-party distributor such that the defendant essentially directs the distributor's activities toward the forum state. See, e.g., Hedges v. W. Auto Supply Co., 161 Vt. 614, 614–15 (1994) (mem.) (holding that defendant "'purposely availed' itself of Vermont's market by selling its heaters to a well-known national distributorship which does business in Vermont"); Charles Gendler & Co. v. Telecom Equip. Corp., 508 A.2d 1127, 1137 (N.J. 1986) ("A foreign manufacturer that purposefully avails itself of [state legal and economic benefits] should be subject to personal jurisdiction, even though its products are distributed by independent companies or by an independent, but wholly-owned, subsidiary."); cf. DeJames v. Magnificence Carriers, Inc., 654 F.2d 280, 285 (3d Cir. 1981) (holding that vessel manufacturer did not utilize vessel owners as distributors of vessel and thus did not "take advantage of an indirect marketing scheme" in manner that purposefully availed manufacturer to forum state).

Here, Investors Corporation asserts that Crompton, as a major manufacturer of EPDM, would certainly be expected to have some relationship with distributors whereby it could direct sales of EPDM into the Vermont market. Hence, Investors Corporation argues, discovery concerning Crompton's relationship to third-party distributors, sales representatives, and other such entities is necessary in order to ascertain the extent to which Crompton has purposefully availed itself of the Vermont market through potential agents. The court agrees. Accordingly, further discovery is appropriate on this basis.

3

Investors Corporation also argues that Crompton's marketing activities may demonstrate Crompton's efforts to purposefully avail itself of the Vermont market, even without directly selling most of its products to Vermont. Marketing efforts are relevant to whether a business has reached into the Vermont market such that a court's exercise of personal jurisdiction is just and fair. See, e.g., Hedges, 161 Vt. at 615 ("It may be presumed . . . that once a national distributor markets its products, the market is national, and includes Vermont."). Thus, Crompton must produce marketing information, as well, in order for Investors Corporation to properly respond to Crompton's motion to dismiss.

Finally, Investors Corporation also asserts a theory of "conspiracy jurisdiction." The validity of this theory is uncertain under Vermont law. In Schwartz v. Frankenhoff, 169 Vt. 287, 294–97 (1999), the Vermont Supreme Court discussed, but did not ultimately adopt, the conspiracy jurisdiction theory, holding instead that the defendants had failed to make a showing that it could meet the elements of the theory. The Court noted, however, decisions by the Supreme Court of the United States "strongly suggest . . . that conspiracy participation is not enough." Id. at 293–94. Although the U.S. District Court for the District of Vermont has recognized conspiracy jurisdiction, the court has also noted that it is not

> enough that the actions in the forum of the resident conspirator, if found to be overt acts in furtherance of the conspiracy, might confer tort liability on nonresident co-conspirators. To meet due process requirements, a substantial connection between the conspiracy and the forum state must be shown. This connection exists where substantial acts in furtherance of the conspiracy were performed in the forum state.

Vt. Castings, Inc. v. Evans Prods. Co., 510 F. Supp. 940, 944 (D. Vt. 1981) (internal citation omitted). Therefore, even if Vermont law currently recognizes conspiracy jurisdiction, acts in furtherance of the conspiracy must have some connection to the forum. Although other states have held that the mere increase in prices that results from alleged price-fixing activities is enough of a nexus to the forum to satisfy jurisdictional requirements in a consumer fraud case, see, e.g., Execu-Tech Bus. Sys., Inc. v. New Oji Paper Co., 752 So. 2d 582, 585 (Fla. 2000), Vermont law ostensibly requires that some part of the conspiracy (or, in price-fixing cases, the agreement to fix prices) have a connection to the forum. Such a requirement conforms with conspiracy jurisdiction

4

elements in other states. See, e.g., <u>Jung v. Assoc. of Am. Med. Colleges</u>, 300 F. Supp. 2d 119, 142 (D.D.C. 2004) (holding that acts in furtherance of conspiracy to restrain trade must take place within forum); <u>In re Vitamins Antitrust Litig.</u>, 270 F. Supp. 2d 15, 29–32 (D.D.C. 2003) (applying Minnesota law and holding that court had conspiracy jurisdiction based on overt acts in furtherance of conspiracy in forum state); <u>In re Vitamins Antitrust Litig.</u>, 120 F. Supp. 2d 58, 69–70 (D.D.C. 2000) (applying Illinois law and holding that court lacked personal jurisdiction because no part of antitrust conspiracy occurred in forum state).

In its opposition to Crompton's motion to dismiss, Investors Corporation argues that Crompton has admitted to being a conspirator to the price-fixing of EPDM and that such price-fixing had a foreseeable effect on the Vermont market. Nevertheless, in its motion to compel, Investors Corporation argues that further discovery of the alleged conspiracy is necessary in order to establish a prima facie case that a conspiracy existed. The court agrees, but only to the extent that Investors Corporation is seeking discovery of facts related to a connection between overt acts in furtherance of the alleged price-fixing conspiracy and Vermont. At this point, Investors Corporation has made no showing that any such overt acts occurred in Vermont, but it is entitled to limited discovery regarding the alleged conspiracy for the purpose of formulating a response to Crompton's motion to dismiss.

In order to avoid overly burdensome discovery at this early stage of litigation, Investors Corporation has agreed to accept the disclosures that Crompton has made to U.S. Department of Justice in its criminal investigation regarding the alleged conspiracy. The court agrees that this may be the most expedient means by which Investors Corporation can obtain appropriate discovery on the above matters. Accordingly, the court orders Crompton to produce the disclosures it has made to federal investigators. The court shall allow Investors Corporation to supplement its previous response to Crompton's motion to dismiss based on evidence in this discovery and may schedule a hearing on the matter if it deems a hearing necessary.

ORDER

For the foregoing reasons, Investors Corporation's motion to compel is GRANTED.

5

Dated at Burlington, Vermont, August 3, 2005.

_____/s/_____
Richard W. Norton      Judge

6